(No. 39744.—)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, vs.
ALAN P. NORCUTT, Appellant.

*Opinion filed January 28, 1970.*

WARD, J., took no part.

GEORGE C. ADAMS, of Chicago, appointed by the court,
for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. HADDAD, Assistant Attorney General, and ELMER C. KISSANE and PATRICK T. DRISCOLL, JR., Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Alan P. Norcutt, was convicted after a jury trial in the circuit court of Cook County under indictments which charged him with setting fire to two separate buildings in Chicago and with the felony-murder of a fireman who was killed in the course of fighting one of the fires. The defendant, who was 17 years old and had one year of high school education, was sentenced to the Illinois State Penitentiary for a term of 15 to 20 years on each charge of arson and a term of 15 to 30 years on the charge of murder, the sentences to run concurrently. On this direct appeal he makes three principal contentions: that his constitutional rights were violated by the admission into evidence of confessions given while in police custody; that the trial court improperly denied his petition for a change of venue; and that the evidence was insufficient to sustain the verdict of the jury.

The two acts of arson of which the defendant was convicted took place within a short span of time on Sunday, December 13, 1964, and the buildings involved were located only a few blocks apart. One fire, which broke out at 10:30 A.M., was in a building at 671 North Clark Street; the other, which began at 12:03 P.M., was in a building at 224 West Illinois Street. The defendant lived with his stepfather and his mother, Mr. and Mrs. John Redden, in an apartment building located at 853 North Clark Street. He had been convicted in January, 1964, on a plea of guilty to two indictments charging him with arson committed during the

summer of 1963, and had been released on parole on November 25, 1964.

The admissibility of the defendant's confessions was challenged by a pretrial motion to suppress, which was denied after an extensive preliminary hearing. The petition alleged that the confessions had been induced by threats, prolonged questioning, and the denial of sleep. These claims were not supported by the testimony of either the defendant or the State's witnesses, and defendant does not pursue them here. He contends, however, that his confession was inadmissible because his interrogation was conducted in an atmosphere of psychological coercion without the presence of an attorney or a member of his family.

The defendant's trial began in 1965, subsequent to the Supreme Court's decision of *Escobedo* v. *Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and was therefore subject to the holding in that case limiting the interrogation of an accused who has requested an opportunity to consult with counsel. In the present case, however, it is uncontroverted that no such request was made, and *Escobedo* consequently has no application. (*People* v. *Hartgraves,* 31 Ill.2d 375; *People* v. *McGuire,* 35 Ill.2d 219.) The defendant's trial antedated *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, which has not been given retroactive effect. (*Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772; *People* v. *Jackson,* 35 Ill.2d 162, 167; *People* v. *McGuire,* 35 Ill.2d 219, 224.) Our decisions do recognize, of course, that the absence of an attorney and the failure to advise an accused of his rights are among the attendant circumstances to be considered in reaching a determination of whether a confession is voluntary. (*People* v. *Jackson,* 35 Ill.2d 162, 168; *People* v. *Hester,* 39 Ill.2d 489, 499; see *Davis* v. *North Carolina,* 384 U.S. 737, 740, 16 L. Ed. 2d 895, 86 S. Ct. 1761.) We turn, therefore, to an examination of the evidence received at the hearing on the motion to suppress.

After receiving information that the defendant had been in the vicinity of the fires, two Chicago police officers, Harry Lustig and John Grundman, called at the defendant's residence on the morning of December 15. He was not at home, but the officers spoke with his mother, Mrs. Redden, and told her that they wished to talk to her son about the fires. Shortly before 7:00 P.M. on December 15, after the defendant had returned home, Mr. and Mrs. Redden voluntarily appeared in Lustig's office. Mrs. Redden inquired whether Lustig still wished to see her son, and upon receiving an affirmative reply she telephoned him and told him to come to the police station.

The defendant arrived at Lustig's office shortly after 7:00 P.M. After a short period of time during which Lustig questioned the defendant in the presence of his parents, he was taken alone into a nearby room where he was questioned by another police officer, William McInerney. The defendant testified that he had no conversation with his parents while he was in Lustig's office. The record does not show that there was any request by anyone that the parents be permitted to be present during the defendant's subsequent interrogation.

The defendant testified that McInerney questioned him alone for 30 or 40 minutes, during which time he maintained that he had been at home throughout the morning of December 13 and denied having set the fires. He also testified that shortly before 8:00 P.M. McInerney's partner, Officer Jerry Stubig, entered the room and stated that the defendant's mother had told him that her son had set fire to the two buildings. The defendant then made an oral confession. He testified that it was Stubig's statement that induced his confession and that he had said to the officers: "I wish to get this stuff off my mind and, if I do, I'll probably feel like a good man."

Stubig testified that when McInerney began his interrogation of the defendant, Stubig took Mrs. Redden into an

empty courtroom near Lustig's office and questioned her concerning the defendant's whereabouts on the morning of December 13. After Mrs. Redden persisted in stating that her son had been at home the entire morning, Stubig spoke separately to Mr. Redden, who contradicted his wife's account, stating that the defendant had not been at home during the hours in question. Stubig then joined McInerney and Norcutt in the interrogation room and relayed to them the information received from Mr. Redden. According to Stubig and McInerney, the defendant said, "All right, I'll tell you the whole story now." Stubig testified that before the defendant commenced his oral confession McInerney told him that he had a right of counsel, but that defendant replied that he didn't care, he just wanted to get the matter off his mind. Stubig and McInerney both denied that defendant was told that his mother had accused him of the acts of arson.

After the defendant completed his oral confession, the police officers summoned a court reporter and an assistant State's Attorney. While awaiting their arrival, it appears that the defendant was supplied with coffee and rolls and that he took a short nap sometime between 8:00 and 9:15 P.M. The defendant testified that between 9:30 and 10:00 in the evening he felt tired, but that the officers would not let him sleep until he answered more questions. McInerney testified that before giving the oral confession, the defendant had at no time mentioned that he was tired, but that after the oral confession, the defendant said that he was greatly relieved and wanted to rest while waiting for the assistant State's Attorney. The officers permitted him to do so. Stubig testified that after the defendant awoke from his nap he said that he felt like he had just had eight hours of sleep.

After the assistant State's Attorney and the court reporter arrived about 9:30 P.M., the defendant repeated his confessions which were taken down in the form of two

separate statements, one relating to the Clark Street fire and the other to the Illinois Street fire. The assistant State's Attorney testified that he advised the defendant that he need not make any statement, but he did not recall advising the defendant of his right to have an attorney present. It is undisputed that at no time during the evening did the defendant either ask for an attorney or have an attorney present. Each of the officers involved testified that there was no use of force or threats and that no promises of immunity or leniency were made at any time; the defendant makes no claim to the contrary.

Dictation of the statements by the defendant took from 10:00 to 10:30 P.M. The reporter then typed them, they were read back to the defendant, and he signed them. This procedure was completed around 12:45 A.M. on December 16, after which the defendant was taken to the lock-up. He was brought before a judge later that morning.

While the defendant's statements were being transcribed, he had a 15 or 20-minute conversation in private with Father John Hazard, a Roman Catholic priest who had been acquainted with the defendant for several years and who had come to the police station between 11:00 and 11:30 P.M. after hearing of the defendant's arrest on a news broadcast. Father Hazard was present while the statements were read back to the defendant, and he witnessed the signing of one of them. He testified that the defendant told him that he had been treated well by the police. He also testified that he informed the defendant that he was not required to sign the statements, but he nevertheless recommended that the defendant do so. The defendant testified that he signed the statements at Father Hazard's recommendation.

The defendant also testified that at some point during the evening he had asked Officer McInerney for permission to talk with his mother, but was told that she was no longer at the police station. It appears from the testimony that this request was not made until 9:30 or 10:00 P.M., after the

defendant had given his oral confession. Mrs. Redden testified that she was locked in the vacant courtroom from 7:30 to 11:30 P.M. and was repeatedly denied permission to see her son. Stubig and McInerney testified that she left the station at about 8:45 P.M. after a conversation in which Stubig informed her that her son had just confessed.

At the trial, the defendant repudiated his testimony on the motion to suppress and stated that the police officers had planted the details of the confession in his mind while he was asleep. He intimated that Officer McInerney had hypnotized him in the interrogation room by flashing a shiny cufflink in his eyes and had induced him to make incriminating statements by post-hypnotic suggestion. No explanation is offered as to why no testimony to this effect was given at the hearing on the motion to suppress. McInerney denied any knowledge of hypnotic technique.

Upon this record we see no reason to interfere with the determination of the trial judge that the defendant's confessions were voluntary.

The defendant's second contention is that the trial judge should have granted his petition for a change of venue. The petition, which was filed on June 14, 1965, alleged that the trial judge and two other judges of the circuit court were prejudiced against the defendant, and that knowledge of this prejudice had first become known to defense counsel on June 8, 1965. The State urges that the petition was properly denied as untimely, since it was not filed until after the trial court had already heard and ruled on the motion to suppress the confessions.

In a long line of decisions this court has held that a petition for a change of venue based on the alleged prejudice of a judge comes too late when the judge has previously expressed a view on some of the issues in the case. (*People* v. *Chambers,* 9 Ill.2d 83; *People* v. *McDonald,* 26 Ill.2d 325; *People* v. *Wilson,* 29 Ill.2d 82; *People* v. *Golson,* 32 Ill.2d 398; *cf. People* v. *Wilfong,* 17 Ill.2d 373;

*People* v. *Catalano,* 29 Ill.2d 197.) Each of these decisions involved proceedings governed by section 21 of "An Act to revise the law in relation to change of venue" (Ill. Rev. Stat. 1967, ch. 146, par. 21). It is not contended that a different rule should apply under section 114—5 of the Code of Criminal Procedure, which became effective January 1, 1964, (Ill. Rev. Stat. 1967, ch. 38, par. 114—5). Moreover, the latter section does not purport to enlarge beyond two the number of judges that may be named in a case having but one defendant. (*People* v. *Chambers,* 9 Ill.2d 83, 87; *People* v. *Goss,* 20 Ill.2d 224; *People* v. *Myers,* 35 Ill.2d 311.) We conclude, therefore, that the petition for change of venue was properly denied.

The defendant's third contention is that the verdict must be set aside because there was no evidence apart from the confession tending to show that defendant committed the crimes charged. That is not a requirement under our decisions, however. While a conviction cannot be based on a confession alone, the other evidence in the case need not be sufficient by itself to connect the defendant to the offense. (*People* v. *Lueder,* 3 Ill.2d 487, 488-9; *People* v. *Jones,* 26 Ill.2d 381, 385-7.) It is enough if the other evidence either tends to show that a crime did in fact occur (see, *e.g., People* v. *Bishop,* 359 Ill. 112, 114-15,) or to corroborate the confession (see, *e.g., People* v. *O'Neil,* 18 Ill.2d 461). We have carefully reviewed the record and conclude that the evidence is sufficient in this respect.

In a related argument it is urged that the defendant's confession must be rejected because other evidence proved conclusively that the doors leading to the premises where the fires originated were constructed and locked in such a fashion as to have made it impossible for him to gain entry. We have reviewed the testimony on this point, and are unable to say that the jury was required to believe that access to the two buildings was impossible. The existence of any inconsistency between the confession and the other evidence

as to the specific method by which defendant entered the buildings goes only to the weight of the confession, not to its admissibility. *People* v. *Bishop,* 359 Ill. 112, 118; *People* v. *Nicholls,* 42 Ill.2d 91, 95-96.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

· Mr. JUSTICE WARD took no part in the consideration or decision of this case.