Ellis CONEY, Jr., Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 55561.

Supreme Court of Missouri,
Division No. 1.

March 12, 1973.

two sentences. While serving the sentence for murder and in December, 1968 Coney filed a motion under Criminal Rule 27.26 to vacate and set aside the three judgments of conviction and sentences. The court appointed an attorney for Coney. A supplemental motion was filed. An evidentiary hearing was held. The circuit court overruled the motion to vacate. Coney has appealed, raising seven points in his appellate brief.

In the late evening of December 5, 1962 Mrs. Betty Foster, age 30, was found lying on a parking lot adjacent to her place of employment, with her skull crushed. She died on December 16, 1962 without regaining consciousness. There was medical evidence that she had been raped. About 5 p. m. on December 7, 1962 two city police officers went to the home of appellant, who at that time was 16 years and 5 months of age. After talking with appellant for five minutes in the presence of his mother, during which time they asked his name and age and said they wanted to talk to him about the assault on Mrs. Foster, the officers arrested appellant and took him to a police station. There he was interrogated by two plain-clothes officers in the polygraph room of the police laboratory. He was given a polygraph test, the result of which was not revealed to appellant. The interrogation commenced about 6 p. m. At first appellant denied participation in the assault. After an hour or more of questioning and after he was quizzed in particular about a pair of tweezers found in his trousers (tweezers which he later admitted came from Mrs. Foster's purse), appellant admitted that he took part in the assault, implicated a companion named Leon Grimm and discussed the details of the crime. He said he suggested the rape and robbery; that he and Grimm laid their plans; that with a knife he took from his mother's kitchen he punctured the right front tire of the automobile which he had previously seen Mrs. Foster park on the lot adjacent to his home; that they lay in wait until she came onto the parking lot to get

Louis Gilden, St. Louis, for movant-appellant.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

In May, 1963 Ellis Coney, Jr., was convicted by a jury of first degree murder and sentenced to life imprisonment. In June, 1963 he pleaded guilty to charges of rape, and robbery in the first degree with a dangerous and deadly weapon. He was given life sentences on each of these pleas, the robbery sentence to run consecutively with the murder sentence and the rape sentence to run consecutively with the other

her car; that as she bent over to look at the flat tire he struck her over the head with a baseball bat brought along for the purpose, knocking her unconscious; that he and Grimm dragged her body to his adjacent back yard; that he and Grimm pulled her dress up to her waist, tore off her underclothing and both had intercourse with her; that appellant took her purse, necklace and removed a ring from her finger, and concealed the ring in an opening in the wall of his home. There is no evidence that appellant was advised of his constitutional rights prior to the making of these first disclosures. Appellant denied that he was advised of his right to have a lawyer, or that a lawyer would be supplied for him, or his right to remain silent, or that there was a juvenile officer available to him. He testified that when the officers told him they wanted him to take a polygraph test he asked what they meant and learned that was a lie detector test; that he asked whether he had to take the test and that the officers said, "Yes, that I had to take one * * * and then I took it." He admitted that no physical force was used upon him at any time. After taking the polygraph test appellant was taken to a room where there was a television set. He watched a Red Skelton program. The officers asked if he was hungry. He said "Yes." They brought him a sandwich and a soda. Appellant acknowledged that he received regular meals while in custody. He testified that on one occasion during the interrogation an officer told him he saw a stain on his pants and asked if that was a blood stain; that he answered that he did not see it; that the officer told him that if he didn't tell the truth "he was going to do something bad to me. He didn't say what the bad was, but he said it."

After the making of these first disclosures one of the interrogating officers notified the office of the circuit attorney. Mr. Koster, an assistant in that office, went to homicide headquarters and had a conversation with appellant about 8 p. m.

the same night. Mr. Koster informed appellant that he was from the circuit attorney's office and that it was his duty to prosecute crimes in the City of St. Louis. Appellant related to Mr. Koster what happened on December 5. Then Mr. Koster, Officer Jacobsmeyer, Corporal Brown, City Police Juvenile Officer Niemeyer and a photographer took appellant back to his home, where in the presence of his mother and the men appellant reached into a hole in the wall and retrieved Mrs. Foster's necklace and ring. A photograph was taken showing appellant removing these articles from their place of concealment. The officers took possession of the baseball bat and butcher knife pointed out by appellant as the bat used to strike Mrs. Foster and the knife used to puncture the tire. Appellant was returned to police headquarters for further questioning. There is nothing to indicate that either appellant or his mother asked that she be allowed to accompany him or that she was denied or discouraged from being with her son during the interrogations. At about 9 p. m. Deputy Juvenile Officer Murphy, attached to the Juvenile Court, went to headquarters and spent 25 or 30 minutes there. He talked with appellant about 5 minutes. He asked appellant how he was treated after he was apprehended and "observed his condition." Appellant indicated that he was not mistreated in any way and that he was not objecting to the way he had been treated. The juvenile officer did not advise appellant of his right to have a lawyer and to remain silent. He discussed with the other officers whether appellant should stay at police headquarters or come over to the Children's Building. Appellant was not transferred to the Children's Building.

Upon returning to headquarters Mr. Koster resumed the talks. Appellant told Mr. Koster that he was sixteen years old. The talks continued for about half an hour and then discontinued for another half hour. A lady stenotypist was called to reduce the statements to writing. About 11 p. m. Mr. Koster resumed his conversations

with appellant. Mr. Koster testified that before starting to record the questions and answers he told appellant that "he had a right not to make a statement; that he did not have to make a statement, and that the subsequent statement, if he did make it, could be used against him." The stenotypist testified that before taking the statement Mr. Koster advised appellant "of his constitutional rights"; told him that he did not have to give a statement; repeated "Do you understand that? And do you understand that this statement can be used in court against you?" and that appellant said yes, that he did. Appellant denies that he was told by the circuit attorney's office that he had a right to a lawyer, or that a lawyer would be supplied for him, or that he had a right to remain silent. Asking the questions and giving the answers took from 30 to 45 minutes. When questions were asked appellant responded promptly. According to Mr. Koster appellant was cooperative, and he spoke normally when he gave his answers. Nothing in the statement or in the evidence indicates that appellant was in any way reluctant to answer the questions. His answers in the written statement were responsive and intelligent. This procedure occurred in the presence of Officers Brown, Jacobsmeyer and Niemeyer. Juvenile Officer Niemeyer (not connected with the Juvenile Court but with the Juvenile Department of the city police) did not talk to appellant at his home and did not advise him of his rights, either there or at the police station. After appellant was returned to the police station from the trip to his home Officer Niemeyer "had a few occasional words" with appellant—a "casual, social conversation" with him—about his background, but other than that he did not remember what they talked about.

After the question and answer session with the stenotypist was concluded the questioning was discontinued. While the stenotypist was reducing her notes to typewritten form appellant went to sleep. The statement was a 15-page written record of the questions and answers. Mr. Koster testified that before asking appellant to sign it he went over the questions and answers with appellant one by one, reading them to appellant and giving him an opportunity to verify or correct the answers. Some corrections were made. After each page was reread and after appellant reanswered some of the questions the page was handed to appellant and he signed it, then Officers Brown and Jacobsmeyer initialed the page. Officer Niemeyer and part of the time Circuit Attorney Reardon were present, in addition to Mr. Koster and the above-named officers, when the questions and answers were read back to appellant. Appellant claims that he fell asleep; that he was awakened; that he was real drowsy; that his eyes wouldn't stay open; that the officers told him three or four times that he couldn't sleep until after he signed the papers; that he was not wide awake enough to hold the pencil; that one of the officers took his hand and guided it across the paper; that he did not know what he signed; that they did not say it was a confession; that the papers were not read to him, and that he could not read or write. After signing the papers he fell back to sleep. He was awakened and taken to his cell. He says the signing took place after midnight; that the questioning went on until 2 or maybe 3 a. m. The stenotypist testified that it was about 2 a. m. when she finished the statement; that she was not there when it was signed. The first ten questions elicited from appellant his name, address, age, his willingness to give a statement about the attack on Mrs. Betty Foster after being informed that the questioner was Robert Koster, an assistant to the circuit attorney; appellant's recognition that he did not have to give a statement; that he was doing so of his own free will; that he knew it could be used against him in court and his acknowledgment that no one had threatened or mistreated him.

On the two days following the giving of the statement (Saturday and Sunday, De-

cember 8 and 9) appellant was interrogated about other unsolved crimes of rape and robbery in the community. On December 10 a petition was filed by the juvenile officer in the Juvenile Division of the Circuit Court asking that court to assume custody of appellant, and the records show that appellant was first received there at 10:45 a. m. on December 10 after having been taken into custody of the Juvenile Court at 9:15 a. m. that day. A summons was issued on December 11 summoning him to appear in Juvenile Court on December 12 and on that date appellant was for the first time brought before the Juvenile Court. Silas E. Garner, an attorney, entered his appearance on behalf of appellant and appellant's mother on December 12. Appellant's mother was present. A hearing was had. The Juvenile Court judge made an order finding that the petition alleged acts which would constitute a felony under state law if committed by an adult, dismissed the information in the Juvenile Court, and ordered that appellant be prosecuted under the general criminal laws because "by reason of his age, maturity, experience and development" he was not a proper subject to be dealt with under the provisions of the Juvenile Code. An appeal was taken to the St. Louis Court of Appeals. On motion of the circuit attorney (the nature of which is not disclosed in this record) that court dismissed the appeal on February 13, 1963. Appellant petitioned the Supreme Court of Missouri for a writ of prohibition against the order transferring the case for prosecution under the general criminal laws. This Court dismissed the petition. Appellant was prosecuted as an adult under the general criminal laws. He pleaded insanity. At the trial the following transpired:

"THE COURT: I assume you are leading up to the introduction, or rather, the identification of the confession. Is there any issue to it being voluntary? MR. BANTLE (for the State): No, Your Honor. * * * THE COURT: No question as to whether it was a voluntary confession made without duress? MR. MANTIA (appellant's trial counsel): No, Your Honor, none at all. THE COURT: It is not necessary to have a hearing without the hearing of the jury? MR. MANTIA: No, sir." When the written confession was offered counsel for appellant made no objection to its admission in evidence. After a 4-day jury trial appellant was convicted of murder in the first degree and his punishment was assessed at life imprisonment.

Appellant's first two points raise the question of the admissibility of the written confession received in evidence at the trial of the murder case.

 First, appellant urges that the confession should have been excluded because Coney's rights under § 211.061 [1] were violated: that although he was a juvenile he was not taken immediately before the Juvenile Court but was interrogated by the city police, the written confession taken and he was held in police custody for four days before being turned over to the juvenile authorities. Any error in the admission of the confession on this ground would have constituted a trial error which, unless of such a nature as to rise to constitutional proportions, cannot be redressed in a proceeding on a motion to vacate and set aside a judgment of conviction under Criminal Rule 27.26, V.A.M.R. The proper procedure to correct mere trial errors is by motion for new trial and/or appeal. No motion for new trial was filed following the murder trial and no appeal was taken. The posttrial procedure provided for by Criminal Rule 27.26, which is a col-

---

1. All section references are to RSMo 1959, V.A.M.S. Paragraph 1 of § 211.-061 reads: "1. When a child is taken into custody with or without warrant for an offense, the child together with any information concerning him and the personal property found in his possession, shall be taken immediately and directly before the juvenile court or delivered to the juvenile officer or person acting for him."

lateral attack on the original judgment of conviction, may not be used as a substitute for a motion for new trial or in lieu of a direct appeal to review trial errors. Franklin v. State, Mo.Sup., 455 S.W.2d 479 [13]; State v. Powell, Mo.Sup., 433 S.W.2d 33; State v. Durham, Mo.Sup., 416 S.W.2d 79; State v. Hooper, Mo.Sup., 399 S.W.2d 115; State v. Hagedorn, Mo.Sup., 305 S.W.2d 700, and cases digested in 9B Missouri Digest, Criminal Law, ▉ [2].

▉ Appellant stresses State v. Arbeiter, Mo.Sup., 408 S.W.2d 26,[2] in support of this contention, but Arbeiter was decided on a direct appeal from a first degree murder conviction and was not a 27.26 proceeding. There is the further factor of importance distinguishing this case from Arbeiter, namely, that in the trial of the Arbeiter murder case defendant objected to the introduction of evidence relating to his statement while in the custody of the police officers, whereas there was no such objection in the trial of Coney's murder case.

▉ Appellant's second reason for excluding the confession is that his constitutional rights, under the due process clause of the United States Constitution and that of Missouri, were violated in that he was not afforded the benefit of counsel or friend, parent or attorney to advise him of his rights and protect his interests during the time he was held and interrogated by the city police; that because of his youth, the failure to deliver him immediately to the juvenile authorities, the failure to send for his mother, the failure "to see to it that he had the advice of lawyer or friend," and his inability to read the statement upon which the conviction may have rested, the confession was obtained in a manner that constituted a denial of due process. In short, appellant is claiming that his oral and written confessions were not voluntary. The record of the original trial shows that there was no hearing prior to the admission of the confessions to determine whether they were voluntary, and that the trial judge made no finding with respect to the question of voluntariness. Nor did the judge at the 27.26 hearing make any findings of fact or conclusions of law with respect thereto. Because the record does not show with unmistakable clarity that the original trial judge or the trial judge at the 27.26 hearing found the confessions to be voluntary, this Court on March 8, 1971, citing Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, and Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593, following submission of the case, ordered that the trial court in the 27.26 case, after giving counsel notice and an opportunity to present evidence and arguments and with defendant present, proceed to consider the evidence and record in the case and any other evidence, and make an express finding as to whether the oral and written confessions were or were not voluntary, and to certify the finding and transcript of additional proceedings to this Court, so that this Court might properly make a determination of all of the issues in the case.

On January 12, 1973 a transcript of the proceedings held in circuit court pursuant to our order of March 8, 1971 was filed in this Court, together with a copy of the findings and order of the trial court, reciting that pursuant to our order a hearing was had on the limited issue of voluntariness; that movant appeared in person and by attorney Louis Gilden; that testimony and evidence were adduced, including the 3-volume transcript of the original trial and other data, and that after thoroughly reviewing the evidence the court found "that movant's oral and written statements, admitted into evidence as his confessions, were voluntarily made and were a product of his rational intellect and free will."

The trial court's determination that the statements were voluntary is not clearly erroneous. This is the test. Jefferson v.

2. (which held admission of incriminatory statements elicited from a 15-year-old suspect by police interrogation in violation of § 211.061 to be a trial error)

State, Mo.Sup., 442 S.W.2d 6; Crosswhite v. State, Mo.Sup., 426 S.W.2d 67, 70. Appellant relies upon Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224, and Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325. Examination of those cases reveals a "totality of coercive circumstances" not present here. The confessions in those cases, figuratively speaking, were wrung out of the minors, both of whom were considerably younger and less experienced than Ellis Coney. More pertinent authorities are State v. Falbo, Mo.Sup., 333 S.W.2d 279; People v. Hester, 39 Ill.2d 489, 237 N.E.2d 466; People v. Pierre, 114 Ill.App.2d 283, 252 N.E.2d 706; People v. Norcutt, 44 Ill.2d 256, 255 N.E.2d 442; Green v. State, 236 Md. 334, 203 A.2d 870; State v. White, 146 Mont. 226, 405 P.2d 761; Hayden v. State, 245 Ind. 591, 199 N.E.2d 102, 201 N.E.2d 329; and Miller v. State, 251 Md. 362, 247 A.2d 530.

■ In this pre-Miranda case the vital question is whether under the totality of the circumstances surrounding appellant's detention, interrogation and confession appellant's statements to the officers were freely and voluntarily given, without compulsion or inducement of any sort, or whether appellant's will was overborne by physical or psychological coercion at the time he confessed. Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037; Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948; Haynes v. Washington, 373 U.S. 503, 513, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513; State v. Smith, Mo.Sup., 415 S.W.2d 748 [1], and cases cited l. c. 750.

■ There is no claim that promises were made or inducements held out to appellant to get him to make a statement. There is no claim of physical abuse; appellant negatives this factor. Appellant does not claim that he confessed through fear. Appellant testified that on one occasion an officer told him that if he did not tell the truth he was going to do "something bad" to him but he did not attribute

the confession to this incident and the trial court could have discounted this single exception as vague and indefinite and contrary to the preponderant evidence of humane and considerate treatment accorded appellant by the officers during the period of interrogation. He was not arrested by uniformed policemen but by plain-clothes officers, to whom he made his first disclosures. Neither appellant nor his mother asked for nor were they denied an opportunity to confer with each other or with counsel or friends. There is ample evidence from which the trial court could have found that the interrogations were not oppressive, were not conducted in an intensive, hurried or coercive manner, and were not too prolonged or physically exhausting or that the confession was elicited in an atmosphere or environment which interfered with appellant's freedom of choice to admit, deny, or refuse to answer. Appellant's claims that he was not informed that it was a confession he was being asked to sign; that he was told he could not sleep until he signed and that he was so sleepy he could not hold the pencil, and that an officer guided his hand across the paper, are inconsistent with the evidence of the previous treatment accorded appellant and presented to the trial court a question of credibility. Rejection by the trial court of this testimony as untrue would not be clearly erroneous. Approximately 8 hours elapsed between the commencement of interrogation and the signing of the written statement but that period was punctuated by the trip to his home to recover the hidden items of evidence; by frequent intermissions to give the stenotypist time to arrive and, after the questioning, to reduce her notes to typewritten form; by time out to take food and drink, and several periods during which appellant admits that he was allowed to sleep. As far as age is concerned, the fact that appellant was a minor did not render his confession ipso facto inadmissible, although age is a factor to be considered in determining the question of voluntariness. State v. Thomas, 250 Mo. 189, 157 S.W.

330; 87 A.L.R.2d 624, § 3, p. 627. In this connection appellant was less than seven months short of age 17 at which he would have been responsible as an adult for criminal activity. Nor did the fact that appellant was illiterate and of subnormal mentality ipso facto render his confession inadmissible. Mental subnormality is simply one factor, although a significant one, bearing upon the question of voluntariness. 69 A.L.R.2d 348; People v. Lara (1967), 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202, 217 [19, 20]. There was evidence at the murder trial that appellant was of moderate (rather than low) intelligence; that he was sane, without psychosis and had the mental capacity to distinguish between right and wrong and to understand the significance and meaning of a criminal act, and was able to cooperate in his own defense; that during medical examination he was cooperative, alert, frank; that he answered questions clearly and distinctly, and understood the examiner's questions; that he was oriented as to time and place; that he understood and related the crime and indicated he knew it was contrary to public opinion as to right or wrong; that he knew it was wrong and made an effort to prevent detection; that although he was a sociopath, with a distortion or sickness of character, he was not mentally ill. There was evidence to the contrary, but the trial court reached a conclusion consistent with a finding that appellant had the mental capacity to know and understand questions asked him and to give truthful and accurate answers about the facts surrounding this crime, and this conclusion is not clearly erroneous. There was a direct conflict between appellant's testimony at the 27.26 hearing and that of Mr. Koster, the assistant circuit attorney, and the stenotypist, at the murder trial, with reference to whether he was advised of his constitutional rights prior to the giving of his written statement, but in pre-Miranda cases extrajudicial confessions are not rendered inadmissible or involuntary by failure to advise the accused of his constitutional rights and such failure constitutes but one factor, among others, to be taken into consideration in determining the voluntariness of a confession. State v. Glenn, Mo.Sup., 429 S.W.2d 225, 233 [9]; State v. Smith, Mo.Sup., 415 S.W.2d 748, 750. In any event, the trial court apparently disbelieved appellant and believed the witnesses for the State on this issue. The written statement itself, which the evidence indicates was given by a person who was cooperative, who responded promptly to the questions and who spoke normally, contains internal evidence that it was voluntarily given; that appellant knew and understood the questions asked and appreciated the significance of his answers. That the claim of involuntariness is an afterthought, lately conceived, and not considered as either fact or factor at trial time, is circumstantially confirmed by the action of trial counsel for appellant who did not consider the question of voluntariness substantial enough to call for a preliminary inquiry (although practically invited by the trial court to do so) and who, instead of objecting to the admission of the confession in evidence,[3] *conceded in open court that there was no question at all that it was a voluntary confession made without duress.*

In the totality of the circumstances revealed by this record we are not left with the conviction that a mistake has been committed; the conclusion of the trial court upholding the voluntary character of the confession is not clearly erroneous, and we find no constitutional objection to the admission of the confession in evidence.

Appellant's third point is that he was deprived of his Sixth Amendment right to effective assistance of counsel at the murder trial because counsel failed to object to the admission of the testimony of several of the State's witnesses concerning appellant's oral confessions; failed to object to

---

3. State v. Arbeiter, Mo.Sup., 408 S.W.2d 26, had not been decided at the time this case was tried.

the written statement of confession, even though the opportunity to do so was provided to him by the trial court; failed to file a motion for new trial and failed to appeal from the murder conviction. Present counsel suggests that when the jury was allowed to consider the confession "the trial for all practical purposes was over."

■ Relief may be had on the ground of inadequacy of counsel when the representation has been "so woefully inadequate as to shock the conscience of the court and make the proceedings a farce and mockery of justice. Holbert v. State, Mo.Sup., 439 S.W.2d 507 [3]; State v. Worley, Mo. Sup., 371 S.W.2d 221, 224 [8]; Kress v. United States, 8 Cir., 411 F.2d 16, 22 (1969); United States v. Currier, supra [2 Cir., 405 F.2d 1039 (1969), cert. den. 395 U.S. 914, 89 S.Ct. 1761, 23 L.Ed.2d 228]; United States ex rel. Carey v. Rundle, 3 Cir., 409 F.2d 1210 (1969); Hayes v. Russell, 6 Cir., 405 F.2d 859 (1969); Campbell v. United States, 5 Cir., 401 F.2d 894 (1968); Cardarella v. United States, 8 Cir., 375 F.2d 222 (1967), cert. den. 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176; United States ex rel. Maselli v. Reincke, 2 Cir., 383 F.2d 129 (1967). This rule has been equated with incompetence of counsel which in effect has 'blotted out the essence of a substantial defense * * *.' Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113, 116–117 (1967)." State v. Caffey, Mo.Sup., 457 S.W.2d 657, 662.

■ No such incompetence has been demonstrated. Appellant's trial counsel testified at the 27.26 hearing that he consulted with Ellis Coney four or five times and talked about the case; that he was in the case for 5 weeks before it went to trial. He talked with Attorney Silas Garner about the case 10 or 12 times. Trial counsel's failure to object to the evidence of the confessions does not per se demonstrate his ineffectiveness as counsel. He entertained a bona fide belief that the statements were voluntarily given, without the taint of duress. He was justified in believing that any effort to exclude them on the ground of involuntariness would be fruitless and self-defeating; that appellant's best interests would be served by defending on the ground of insanity and low mentality, of which there was substantial supporting evidence. His judgment in this respect was partially vindicated by the express finding by the circuit court that the confessions were voluntarily made. (That question was thoroughly explored in the two-day hearing in November, 1971, following our order that a special hearing be conducted on this particular issue. The transcript of the testimony at the hearing on voluntariness occupies 297 pages of supplemental transcript.) On the whole record we cannot condemn trial counsel's judgment as faulty or his representation as ineffective. He prepared the defense with care; cross-examined with vigor; made an effective opening statement; and summoned numerous witnesses both lay and professional in support of the defense of insanity. In the face of a strong plea by the circuit attorney for the infliction of the extreme penalty, counsel vigorously, intelligently and with professional competence pleaded for the life of his client and for his acquittal on the ground of insanity, and saw to it that the jury was fully instructed on that defense.

■ As to the charge that counsel should have filed a motion for new trial and taken an appeal, it is not outside the realm of reason that in counsel's judgment saving appellant from the death sentence was the best result possible under the brutal and shocking circumstances of this case and that he did not want to further expose his client to that possibility. "As to the failure to file a motion for new trial that may have been the result of the exercise of legal judgment on the part of the one person who was present at the trial and had personal knowledge of what occurred and who was in the best position to know and determine whether a motion for new trial should have been filed. The failure to file

a motion for new trial, standing alone, does not imply inadequate representation, let alone establish it." State v. Franklin, Mo.Sup., 379 S.W.2d 526, 528. Even if counsel had been negligent or was guilty of an error in judgment in not filing a motion for new trial, that would not entitle appellant to vacation of the judgment, for negligence or want of skill of counsel affords no ground for reversal of a judgment. State v. Hooper, Mo.Sup., 399 S. W.2d 115, 117; White v. State, Mo.Sup., 430 S.W.2d 144, 147. Logically, the same considerations should apply to failure of counsel to take an appeal. The ruling of the trial court on the question of adequacy of representation may not be declared clearly erroneous where as here there is no showing of negligence, lack of skill, or representation so woefully inadequate as to shock the conscience of the court and make of the trial a farce and mockery of justice; no showing of prejudice from failure to take the indicated steps; and where instead of "blotting out the essence of a substantial defense" counsel blocked out a vigorous and substantial defense of insanity and demonstrated unusual vigor in presenting it in a difficult case. That his representation was effective is attested by the fact that he saved appellant from the gas chamber.

For his fourth point appellant attacks the validity of § 211.071, RSMo 1969,[4] claiming that it violates the due process clause of the Fourteenth Amendment to the Constitution of the United States in that it is vague and lacks sufficient standards. He argues that the section compels a person "to guess about why and when the Juvenile Court will compel or cause a juvenile person to be tried for an offense as an adult; * * * to guess as to the criminal consequences of his actions"; that under this section a juvenile cannot know with reasonable certainty whether his conduct will be "punished under the Juvenile Code or under adult criminal statutes." Appellant further asserts that the order of the Juvenile Court reciting that he was not a proper subject to be dealt with under the juvenile code "for the reason of his age, maturity, experience and development" is an insufficient certification under Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, because it does not state in a reasonable manner how appellant's age, maturity, etc. pertain to the question of certification.

■ Section 211.071 is not void for vagueness. It vests in the juvenile judge a discretion, after receiving the investigation report and hearing evidence, to determine whether the juvenile before him is a proper subject to be dealt with under the juvenile code under which, by the provisions of § 211.011, RSMo 1969, he would receive "such care, guidance and control, preferably in his own home, as will conduce to the child's welfare and the best interests of the state," or whether he should be prosecuted under the general law. See State v. Rutledge, 321 Mo. 1090, 13 S.W.2d 1061 [4, 5, 8]. The words and terms used in § 211.-071 "are of common usage and understandable by persons of ordinary intelligence" and therefore they satisfy the constitutional requirement as to definiteness and certainty. State v. McQueen, Mo.Sup., 378 S. W.2d 449, 453.

4. § 211.071, RSMo 1969: "In the discretion of the judge of the juvenile court, when any petition under sections 211.011 to 211.431 alleges that a child of the age of fourteen years or older has committed an offense which would be a felony if committed by an adult, or that the child has violated a state or municipal traffic law or ordinance or that a minor between the ages of seventeen and twenty-one years over whom the juvenile court has jurisdiction has violated any state law or municipal ordinance, the petition may be dismissed and such child or minor may be prosecuted under the general law, whenever the judge after receiving the report of the investigation required by sections 211.011 to 211.431 and hearing evidence finds that such child or minor is not a proper subject to be dealt with under the provisions of sections 211.011 to 211.431."

 This Court has not determined whether Kent v. United States, supra, which ruled that it is "incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor * * * with sufficient specificity to permit meaningful review" (383 U.S. l.c. 561, 86 S.Ct. l.c. 1057) is to be applied retroactively. If Kent were to be given retrospective effect in this case the reasons given by the Juvenile Court would suffice to comply with Kent, which requires "a statement of reasons for the Juvenile Court's decision" but does not specify any particular form or require detailed findings of fact. The factors referred to in the Juvenile Court's order in this case are significant and relevant in determining whether to relinquish its jurisdiction to permit prosecution under the general law. A Juvenile Court might reasonably exercise its discretion not to retain juvenile jurisdiction over Ellis Coney, who is shown among other things to have been a well-developed, nearly 17-year-old, experienced and mature-appearing person, charged with committing violent and vicious acts of rape, murder and robbery which if committed by an adult would constitute major felonies. A Juvenile Court might reasonably conclude, in the totality of the circumstances of Ellis Coney's case, that such a person should be dealt with under the general law rather than within the benign, rehabilitative purposes of the juvenile code for a period limited to four and a half years.[5]

 Appellant's fifth point challenges § 211.071 as violative of the equal protection of the laws clause of the Fourteenth Amendment, in that the section allows juvenile offenders to be classified as "proper subjects" and to be dealt with as adults without providing any standards for such classification; that this does not provide a rational basis for allowing one juvenile to be dealt with under the juvenile code, and another who may have committed the same acts to be prosecuted under the general criminal laws and exposed to the possibility of execution; that a classification cannot constitutionally "be used to give unequal liability for punishment for the same acts because of a difference in age, maturity, experience and development." This question has been decided adversely to appellant's contention by Ragland, J., speaking for the Court en banc in State v. Rutledge, supra, 13 S.W.2d l.c. 1066, to which reference is made without quotation or further exposition.

 Next, appellant takes exception to the dismissal by the St. Louis Court of Appeals of his appeal from the waiver order of the Juvenile Court and the refusal of the Supreme Court to entertain the question on his petition for a writ of prohibition. He claims that these actions denied him due process of law under the Fourteenth Amendment. Appellant argues that the waiver order was a final order and decision of critical importance to appellant, which he was entitled to appeal in order to have the "fair determination" of the question of waiver referred to in Kent, under § 211.261, RSMo 1969, which provides that an appeal shall be allowed to the child from any final judgment, order or decree made under the provisions of the juvenile code. This point must be disallowed for several reasons. The petition for writ of prohibition in the Supreme Court, filed while the appeal was still pending and before its dismissal by the court of appeals, was premature. After the court of appeals acted appellant made no effort to secure a review of the question by this Court on certiorari under Arti-

5. Section 219.160, V.A.M.S., limits commitment of a male person to the state board of training schools to "[a]ny boy over the age of twelve years and under the age of seventeen years" and § 211.041,

V.A.M.S., limits retention of jurisdiction of a child for purposes of Chapter 211 (Juvenile Courts) to his attainment of the age of twenty-one years.

cle V § 4 or by transfer under Article V § 10 of the Constitution of Missouri 1945. Nor did appellant file a motion in the general criminal division requesting dismissal of the information or remand to the juvenile division. Having a competent lawyer and the benefit of his advice and counsel the failure to file a motion to remand constituted a waiver of any objections he may have had to the transfer, under the ruling in Jefferson v. State, Mo.Sup., 442 S.W.2d 6, 12 [7]. Decisive of the question is the case of In re T. J. H., Mo.Sup. en Banc, 479 S.W.2d 433, holding that an order of a juvenile court relinquishing jurisdiction to deal with a child under the juvenile code is not a final order from which an appeal shall be allowed to the court of appeals.

 Appellant's seventh point is that appellant's pleas of guilty in the rape and robbery cases were induced by mistake, fear and the unconstitutionally admitted confession. There was no evidence that the pleas were entered by mistake. Appellant offered no evidence that the existence of the confession impelled him to enter the guilty pleas, but in any event "[t]he fact that there was an allegedly inadmissible confession in existence which might have been used in evidence against appellant is no sufficient reason to vacate the judgment and sentence entered pursuant to a plea of guilty, where the plea was otherwise voluntarily and understandably made." Maxwell v. State, Mo.Sup., 459 S.W.2d 388, 392 [2]; Hamby v. State, Mo.Sup., 454 S.W.2d 894, 897. The trial court found and we affirm the finding that the pleas of guilty were made voluntarily, intelligently, and with the advice of competent counsel. On the charge that he pleaded guilty by reason of fear appellant testified at the 27.26 hearing that his lawyer told him to plead guilty to the other two charges; that he rejected the idea, but that his lawyer told appellant that if he did not plead guilty he would leave him "in this hot water" by himself; "that the Judge had two more raps and it was best for me to snatch out, and that if I didn't, I would be in the hot water by myself * * * and he was going to leave." Appellant's trial counsel testified at the 27.26 hearing that he talked to appellant two or three times before the guilty pleas were entered; that he talked with appellant's mother two or three times and with his older brother "in the cell with Ellis." Asked "Did you ever tell him that if he did not plead guilty to the other two charges you would withdraw and leave him in hot water?" counsel answered, "Absolutely not." The trial court resolved this direct conflict in the evidence by believing the lawyer and rejecting appellant's testimony. The trial judge was in a better position than we are to decide this question of credibility and we defer to his finding.

The ruling of the circuit court on the motion to vacate was not clearly erroneous and therefore is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HOLMAN, P. J., and BARDGETT, J., concur.

SEILER, J., concurs in result.