**UNITED STATES of America ex rel. Clifford KNIGHTS, Petitioner-Appellant,**

v.

**Dennis WOLFF, Warden, and William Scott, Attorney General of Illinois, Respondents-Appellees.**

No. 82–1198.

United States Court of Appeals, Seventh Circuit.

Argued March 29, 1983.

Decided July 8, 1983.

As Corrected July 25, 1983.

Certiorari Denied Nov. 28, 1983.

See 104 S.Ct. 504.

Maren Dougherty, Chicago, Ill., for petitioner-appellant.

Kenneth A. Fedinets, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before PELL and POSNER, Circuit Judges, and JAMESON, Senior District Judge.*

JAMESON, Senior District Judge.

Petitioner-appellant, Clifford Knights, convicted in state court of the murders of two Chicago police officers, has appealed the denial of his petition for a writ of habeas corpus. We affirm.

### I. Procedural Background

On August 25, 1971, following a jury trial, Knights was convicted in the Circuit Court of Cook County, Illinois, together with Johnny Veal, of the shooting deaths of two Chicago policemen. Knights was sentenced to a term of imprisonment of not less than 100 nor more than 199 years. He filed a motion for a new trial, which was denied following a hearing.

A direct appeal was taken to the Illinois Appellate Court, First District, which affirmed the conviction. *People v. Veal*, 58 Ill.App.3d 938, 16 Ill.Dec. 188, 374 N.E.2d 963 (1st Dist.1978). On September 28, 1978, the Supreme Court of Illinois denied Knights' request for leave to appeal. Knights filed a petition for a writ of certiorari in the Supreme Court of the United States, which was denied on April 16, 1979. 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979).

On January 24, 1980, Knights filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Illinois, Eastern Division. The writ was denied without a hearing in a memorandum opinion and order entered February 25, 1980. A motion to vacate or correct dismissal of the petition was denied on November 20, 1981. *U.S. ex rel. Knight v. Wolff, et al.*, 529 F.Supp. 147 (N.D.Ill. 1981). A notice of appeal was filed on December 9, 1981. This court, on May 21, 1982, granted a certificate of probable cause to appeal.

### II. Contentions of Parties on Appeal

Knights contends that (1) the trial judge denied Knights' constitutional right to confront witnesses in declining to recuse himself from presiding over the post-trial motion when the central issue of the motion revolved around events outside the record to which the trial judge was a witness; (2) Knights was denied due process of law by the prosecution's failure to disclose that juvenile proceedings were pending against two key state witnesses at the time they testified at the trial; and (3) Knights was denied due process of law by the prosecution's failure, prior to trial, to disclose statements of witnesses favorable to Knights and statements allegedly made by Knights.

---

* Hon. William J. Jameson of the District of Montana, sitting by designation.

The State contends that (1) Knights was barred from litigating in state court his claim that the trial judge should have recused himself because it was not timely made, and because of this procedural default he was likewise barred from habeas corpus review; (2) the prosecution did not fail to disclose information that was favorable to Knights at his state court trial; and (3) habeas corpus relief is not required based on Knights' claims of the prosecution's suppression of favorable evidence.

### III. Is Knights' Claim Barred from Habeas Corpus Review?

■ Knights argues that he was denied his Sixth Amendment right, through the Fourteenth Amendment, to be confronted by witnesses against him by the trial judge's refusal to recuse himself from presiding over Knights' motion for a new trial. The basis of the motion was a conversation in chambers during the course of the trial between the trial judge and a witness for the prosecution, Jake Davis. The motion for a substitution of judges was not made, however, until after the court had heard and denied the motion for a new trial.

As the Illinois Appellate Court noted in People v. Veal, supra, Knights and his codefendant filed a lengthy motion for a new trial, followed by extended hearings. At trial the prosecution had presented the testimony of minor twins Jake and Jerry Davis, who testified to alleged incriminatory statements made by Knights. At the hearings on the motion for a new trial the Davis twins and another witness recanted their trial testimony implicating the defendants. They testified further that the State had used force and threats to make them testify against the defendants and that the assistant State's attorneys and some of the police officers knew that their testimony at trial and before the grand jury was false. 16 Ill.Dec. at 205, 374 N.E.2d at 980. At the conclusion of the post trial hearings, the trial court made lengthy findings of fact, finding that the recantations were not cred-

ible and that their testimony at trial had been corroborated by other evidence and other witnesses. Id. 16 Ill.Dec. at 206, 374 N.E.2d at 981.[1]

After Jake had testified at trial he requested to speak with the judge. The judge took him into chambers with a court reporter and deputy sheriff. Counsel were excluded. No objection was made by counsel. Jake indicated to the judge that he wanted to go home with his mother. The judge sent the bailiff to find Mrs. Davis. He then told the reporter to go off the record. When Mrs. Davis arrived, the reporter was instructed to "go on the record" again. As the court noted in People v. Veal, supra, Jake testified at the post trial hearing that during the time designated as "off the record" he "told the judge that the prosecutor had made him lie about defendants Knights and Veal being the killers:

'The Judge wouldn't let the court reporter take the part down when I was telling him how the State's Attorney and police had made me get on the stand and say this, that it was lying.'

Jake further testified that he told the judge that the assistant State's attorneys and the police had threatened him and his mother if he didn't testify, but he did not explain what the threats were." 16 Ill.Dec. at 213, 374 N.E.2d at 988. The court made a finding that the alleged "off the record" comments did not occur. Id. 16 Ill.Dec. at 214, 374 N.E.2d at 989.

The court in People v. Veal noted further that defense counsel knew that the question of what occurred "off the record" would be an issue from as early as the cross-examination of Davis during the recantation hearing, but "not until weeks later, and after the court had denied the motion for a new trial .... did the defense move for substitution of judges." Accordingly the court held the motions were not timely made, saying in part:

[I]t is a well-settled rule that a petition for change of venue after the court has

---

1. The opinion of the Illinois Appellate Court in People v. Veal contains a detailed summary of the evidence and proceedings at both the trial

and hearing on motion for a new trial, to which reference will be made in this opinion.

ruled on any matter going to the merits of the case comes too late. (*People v. Myers* (1966), 35 Ill.2d 311, 326, 220 N.E.2d 297, 307....) This rule is followed even where the petition alleges actual prejudice and that the prejudice was not known until after the ruling on an issue. (*People v. Norcutt* (1970), 44 Ill.2d 256, 255 N.E.2d 442.) Here, where the motion was made only after the court had ruled on the very issue the motion attacked, it came too late.

16 Ill.Dec. at 214, 374 N.E.2d at 989.

In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the defendant had failed to make a timely objection under the Florida contemporary objection rule to the admission of his inculpatory statements and had thereby waived his right to challenge their admissibility in State court in post conviction motions. The Court held that absent a showing of cause for noncompliance and actual prejudice he was also barred from federal habeas corpus review of his *Miranda* claim. The recent case of *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982) reaffirmed the holding that "any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief." See also *United States ex rel. Veal v. De Robertis,* 693 F.2d 642 (7 Cir.1982) and *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354 (7 Cir.1983, on rehearing en banc).

The Illinois Court has clearly held that Knights' claim of error in the trial judge's declining to recuse himself was waived and barred because "it came too late." His petition for habeas corpus review is likewise barred in the absence of cause and actual prejudice. There is no showing of cause. Knights and his counsel knew that the off the record conversation would be an issue when Jake Davis was cross-examined at the hearing on the motion for new trial, but did not file the motion for substitution of judges until several weeks later after the issue had been decided. Nor do we find any evidence of actual prejudice. The district court noted that this issue "was analyzed in depth" by the state appellate court, which "concluded that no constitutional right has been violated." The district court adopted "the state court's finding that the error, if any, of relying on information obtained during an in chambers discussion with a witness following his testimony is harmless, particularly since the defense counsel knew of the off-the-record inquiry but did not object until after denial of a new trial. *People v. Veal,* 58 Ill.App.3d 938, 972–975, 16 Ill.Dec. 188, 213–215, 374 N.E.2d 963, 988–990 (1978)." We agree.

IV. *Was Knight Denied Due Process by Failure to Disclose Pending Juvenile Proceedings Against the Davis Twins?*

■ Knights contends that the failure of the prosecution to disclose that juvenile charges were pending against the Davis brothers at the time of the trial or to correct Jake's testimony that there were no pending charges constitutes a violation of due process under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[2] He argues that the pendency of juvenile charges was information favorable to the defendants in that it tended to show the interest and bias of the Davis brothers. He argues further that "the level of State intervention in Jake and Jerry Davis' lives was for the purpose of inducing them to lie at trial", and that "The reward for presenting testimony that the prosecution wanted was freedom from further State surveillance."[3] He notes that pending juvenile

---

**2.** *Brady v. Maryland* held that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–1197.

**3.** Specifically, Knights claims that the prosecution failed to disclose that Jake and Jerry Davis had been arrested pursuant to juvenile arrest warrants, had been charged, and were under supervision at the time of their trial testimony. He claims further that they had been separated from their parents for long periods of time, had been placed at various times in juvenile facili-

charges were dismissed immediately after the brothers had testified at Knights' trial.

These contentions were considered at length and rejected by the state appellate court in *People v. Veal,* and also by the district court in a well considered opinion denying the habeas corpus petition.

As the court noted in *People v. Veal,* 16 Ill.Dec. at 206, 374 N.E.2d at 981, Knights and his co-defendant requested "that the State disclose 'the criminal record and pending criminal cases, if any, of those persons the State may call as witnesses.' Nothing in the record indicates that the defendants requested information concerning the Davis brothers juvenile records." The court recognized, however, that "information may be so significant that the State's duty to disclose is not dependent upon the defendant's request," citing *United States v. Agurs,* 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). After a careful analysis of the record and the cases upon which Knights relied, the court concluded that the "information concerning the juvenile proceedings against the Davis brothers is not sufficient to create a reasonable doubt of defendants' guilt" and that while Jake's testimony may have been confusing, it was clearly harmless beyond a reasonable doubt. *Id.* 16 Ill. Dec. at 206–207, 374 N.E.2d at 981–982; 16 Ill.Dec. at 208, 374 N.E.2d at 983.

Judge Crowley, in his memorandum opinion and order, entered February 25, 1981, first noted the different standards for specific and general requests for information:

In a situation where a specific request for impeachment material is made, reversal is warranted if the suppressed evidence would have affected the outcome of the trial. *Scurr v. Niccum,* 620 F.2d 186 (8th Cir.1980). A different standard is applied where only a very general request for impeachment information is made. Then the standard of review is whether the failure to disclose such evidence creates reasonable doubt, *United States v. Ramirez,* 608 F.2d 1261 (9th Cir.1979) or

would have resulted in probable acquittal *United States v. Jackson,* 579 F.2d 553, 560 (10th Cir.) *cert. denied,* 439 U.S. 981 [99 S.Ct. 569, 58 L.Ed.2d 652 (1978). Regardless of whether Knights' request is construed as specific or general, none of the information allegedly suppressed was material. Therefore, there has been no due process violation.

In support of this conclusion, the district court's opinion concisely reviews the major cases upon which appellant relies and the relevant facts:

None of the cases relied on by Knights supports his due process claim. In *Davis v. Alaska,* 415 U.S. 308 [94 S.Ct. 1105, 39 L.Ed.2d 347] (1974) the prosecution's key witness had been adjudicated a delinquent for burglarizing two cabins and was on probation at the time he testified. The prosecutor's key witness in *Giglio v. United States,* 405 U.S. 150 [92 S.Ct. 763, 31 L.Ed.2d 104] (1972) had been promised that he would not be prosecuted if he testified before the grand jury and at trial. In *Napue v. Illinois,* 360 U.S. 264 [79 S.Ct. 1173, 3 L.Ed.2d 1217] (1959) the state's principal witness at the murder trial, who was already serving a 199 year sentence for the same murder, falsely testified that he had not received a promise of consideration in exchange for his testimony. In each instance the Court held that the suppressed evidence was material and, thus, the failure to disclose the information constituted a due process violation.

These cases have no application here, for the Davis brothers were never charged or convicted of a serious crime. There were no leniency agreements made between the prosecutor and the witnesses. Further, Jake Davis' testimony that no charges were pending against him or his brother was true. Jake was merely on probation for going to the Cabrini Green area after being ordered by the juvenile court to stay out of the area.[4]

ties, and at the time of trial were under a strict probationary sentence.

4. On July 18, 1970, the day after the murders, an Assistant State's Attorney had advised the Davis brothers that it would not be safe for

The order was precipitated by a shooting incident in which Jake was hurt. His brother had a Minor in Need of Supervision (MINS) petition pending against him. Jake testified that charges had been placed against him and that he was on probation for "being shot". He also stated that his mother had told him that the charges had been dismissed when, in fact, at the time of Jake's testimony, proceedings had been continued on the MINS petition. Neither probation nor the MINS petition are juvenile charges. *People v. Veal,* 58 Ill.App.3d 938 [16 Ill. Dec. 188], 374 N.E.2d 963 (1978). Although Jake's answers about the pending proceedings were somewhat confusing, there is no evidence that Jake was lying. Moreover, the defense had ample opportunity to correct any misinformation on cross-examination. There is no evidence to substantiate the charge that the juvenile proceedings were initiated in order to keep the Davis twins "prisoners of the state" in order to use the threat of pending charges to procure favorable testimony.

We agree with the state appellate court and the district court that neither nondisclosure of the juvenile court proceedings involving the Davis brothers nor Jake's testimony at trial denied Knights due process. We find no evidence to support Knights' contention that the juvenile proceedings were for the purpose of inducing the Davis brothers to "lie at trial," or that the dismissal of the proceedings after trial was a reward for their testimony.

## V. *Was Knights Denied Due Process by the Prosecution's Failure to Disclose Statements Favorable to Knights and Statements Allegedly Made by Knights?*

Finally, Knights contends that he was denied due process of law by the prosecutor's failure to comply with the court's order permitting discovery and withholding witnesses' names, addresses and statements which were exculpatory material under *Brady v. Maryland, supra.* Knights argues that the revelation of this information at trial did not ameliorate the "extreme prejudice" resulting from the prosecutor's suppression of evidence. Knights argues further that the testimony of six witnesses with respect to incriminating statements allegedly made by Knights (which he denied making), came as a surprise to him, and that the prosecution failed to disclose the statements despite a specific request for that information in the pretrial discovery.

■ The first alleged instance of prosecutorial suppression of evidence favorable to the defense involved statements in a file brought into court by a police department employee. The statements were furnished by residents of the Cabrini Green area who saw and/or heard some of the events in question, including observations as to origin of the shots, the direction the police officers were facing at the time they were shot, and the identity of recovered weapons. In concluding that alleged suppression of these statements did not constitute a *Brady* violation, the court in *People v. Veal* said:

them to return to the crime scene area, the Cabrini Green neighborhood. The brothers then spent several days at a police camp followed by several days at a motel while Jake testified before the grand jury. Thereafter the boys spent a month with their grandmother in Mississippi, followed by a month with their mother, who had moved from the Cabrini Green area. In November, 1970, Mrs. Davis alleged in a juvenile court petition that her sons were Minors in Need of Supervision (MINS). A warrant was issued on this petition. The boys were held for two days on the warrant and then released, but ordered to stay away from the Cabrini Green area. At a later hearing on the petition, they were placed on MINS probation. In January, 1971, the Assistant State's Attorney learned that Jake had been shot in the hand a few blocks from the Cabrini Green area. While Jake had violated the order of the juvenile court, no formal charge of violation of probation was filed against him. The Davis brothers were then placed in the custody of their grandmother in Mississippi until they returned to testify at the trial. At the close of the trial the juvenile proceedings—the MINS petition and two neglect petitions—were dismissed.

This material in this footnote does not appear in Judge Crowley's opinion, but sets out in more detail the facts upon which his conclusions were based.

The first is of Jackie Furtell's statement that she heard shots and saw sparks from the thirteenth and seventeenth floors of the 1150 North Sedgwick building when the policemen were shot. Defense counsel read her statement into the record and later she testified in a similar way when called by the defense. We fail to see how her statement was suppressed by the State. Indeed, a number of the State's witnesses gave testimony that shots came from several directions, including the upper floors of that building. Further, it clearly does not create a reasonable doubt of guilt that does not otherwise exist. Similarly, the claimed suppression of the statement of Auretha Outlaw, who had told police officers that she heard shots from the 1150 North Sedgwick building, is without merit. It does not create a reasonable doubt of guilt that does not otherwise exist.

Defendants contend that an inventory slip listing the weapons seized at 1119 Cleveland and 1150 Sedgwick also was suppressed by the State. The record reflects that defense counsel saw the inventory slip at trial. Defendant Knights' attorney had visited the Chicago Police Department Crime Laboratory prior to trial and had interviewed personnel about the weapons. We fail to see how the information regarding other seized weapons was suppressed. Even if it had been suppressed, statements of defense counsel at trial regarding weapons not alleged to be the murder weapons indicate that defendants considered the other weapons to be immaterial. Clearly information which the defense considered immaterial at trial will not be found on appeal to be so material to the defendant that a *Brady* violation exists.

16 Ill.Dec. at 208, 374 N.E.2d at 983.

With respect to the incriminating statements made by Knights to the six witnesses, the State did provide the names of these witnesses prior to trial. At the trial, Knights and his co-defendant received copies of reports of the statements or of grand jury transcripts of the witnesses' testimony. Moreover, as appellees argue, the state-

ments were not favorable to the accused, but rather inculpatory, relating to appellant's planning of and participating in the murders. Accordingly there was no violation of the *Brady* rule (see note 2, *supra*).

■ Finally, Knights contends that the State failed to produce a report by Officer Douglas Bolling. In concluding that Knights was not denied a fair trial with respect to this report, the court in *People v. Veal* said:

At trial, Bolling testified that Knights' reputations for peaceableness and truthfulness in the community were bad. Defendants demanded the production of Bolling's report on Knights. Bolling stated that the only report he had made about Knights did not concern Bolling's testimony in this case. The trial judge ordered the production of the report. Bolling further testified that a search of police files failed to locate the report. There is no evidence in the record that the prosecution or the police were responsible for its unavailability.

16 Ill.Dec. at 209, 374 N.E.2d at 984.

When the prosecution advised the court that the Bolling report could not be located, Knights moved to strike Bolling's testimony, which was denied. In contending that the motion should have been granted, appellant relies upon *United States v. Well,* 572 F.2d 1383 (9 Cir.1978).

*Well,* however, is distinguishable. There, all of the Government's key witnesses had been interviewed by a Government agent who had taped the interviews. The agent then summarized their conversations in a memorandum and erased the tapes. At trial the defendant requested material pursuant to the Jencks Act, 18 U.S.C. § 3500. When the tapes could not be produced the trial court suppressed the testimony of the witnesses. On appeal the court recognized that the Jencks Act provides that after a Government witness testifies at trial, the Government must produce, on request, any previously made statements by that witness which relate to the witness's testimony on direct examination. Since the tapes had

been destroyed, the court held that the trial court properly suppressed the testimony.

In this case the report did not contain statements made by Officer Bolling or relate to his trial testimony. No constitutional error was committed in denying the motion to strike his testimony.

We affirm the order of the district court dated February 25, 1981, denying the petition for a writ of habeas corpus, and the order of November 20, 1981, denying the motion to vacate or correct the February 25, 1981 order.