Cathy BURNS, Plaintiff–Appellant,

v.

Rick REED, Defendant–Appellee.

No. 93–1711.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1994.

Decided Jan. 5, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 6, 1995.

William L. Wilson, Hahn, Walz, Knepp, Dvorak, & Higgins, South Bend, IN, Michael K. Sutherlin (argued), Ida Coleman Lamberti, Indianapolis, IN, for plaintiff-appellant Cathy Burns.

David A. Nowak, Columbus, IN, Wayne E. Uhl (argued) Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, IN, for defendant-appellee Rick Reed.

Before CUMMINGS, ESCHBACH and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

This case presents the narrow question of whether the defendant, a Muncie, Indiana, deputy prosecuting attorney, is entitled to qualified immunity from suit under 42 U.S.C. § 1983 for his actions concerning the 1982 interrogation and subsequent arrest of plaintiff Cathy Burns for allegedly shooting her two sons. Defendant authorized interrogation of plaintiff while she was under hypnosis and later advised Muncie police officers, based primarily on the results of the hypnosis session, that they had probable cause to arrest plaintiff. As it turned out, both of these decisions may have been ill-advised; all charges were later dropped against plaintiff, and the hypnosis session was roundly discredited as inept. Nevertheless, because qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law," *Burns v. Reed,* 500 U.S. 478, 495, 111 S.Ct. 1934, 1944, 114 L.Ed.2d 547 (citation omitted), it provides defendant with shelter from suit in the instant case.

## FACTS

The factual background of this case has been set forth in detail in its previous jour-

ney through this Circuit.[1] A brief summary of the facts is necessary, however, to understand the nature of plaintiff's claim.

On September 2, 1982, an intruder entered plaintiff's Muncie, Indiana, home, shot and wounded her two sons, and scrawled a threatening message on her mirror. Muncie law enforcement personnel soon turned their attention to plaintiff as their primary suspect, although she repeatedly denied any involvement in the crime. Plaintiff took and passed a polygraph examination and a voice stress test, and provided handwriting exemplars which were exculpatory, but investigating officers continued to view her as the prime suspect.

On September 21, 1982, following a daylong interrogation, two police officers convinced plaintiff to submit to questioning under hypnosis. Before proceeding, one officer contacted defendant—a deputy prosecuting attorney for the county—at home to inquire whether the proposed course of action of hypnotizing their chief (although as-yet unarrested) suspect was proper; defendant gave the go-ahead. The officers proceeded with the hypnosis, and in the course of their questions elicited statements which led them to believe that plaintiff might suffer from a multiple personality disorder and might have committed the shootings. After learning of the results of the hypnosis session and consulting with a psychiatrist, defendant informed the officers that they likely had probable cause to arrest plaintiff. The officers subsequently arrested plaintiff and detained her in a psychiatric ward, where she remained for four months until experts concluded that she did not suffer from a multiple personality disorder. The prosecutor's office dismissed all charges against plaintiff after the trial court granted her motion to quash the statements made under hypnosis.

1. Cathy Burns originally filed a complaint against ten defendants including Rick Reed on January 31, 1985. The lower court dismissed claims against several of the defendants prior to trial; three other defendants settled with Burns for a sum of money totaling $250,001. After Burns presented her case at trial, the judge directed a verdict for Reed on the grounds that as a prosecutor he was entitled to absolute immunity. This Court affirmed the ruling. *Burns v. Reed,* 894 F.2d 949 (1990). The United States

## ANALYSIS

■ Plaintiff now appeals the district court's finding, on remand from the United States Supreme Court, that defendant was entitled to qualified immunity for his actions in authorizing the hypnosis and later the decision to arrest her. She faces a heavy burden. Qualified immunity protects public officials from civil suit based on their discretionary functions except where such conduct violated "clearly established" law. *Sherman v. Four County Counseling Center,* 987 F.2d 397, 407 (7th Cir.1993). The Supreme Court's test for qualified immunity has been summarized by this Court as follows:

> In determining whether the right alleged to have been violated was "clearly established," the constitutional right must be identified in a particularized sense with respect to the circumstances of the alleged violation. In other words, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The plaintiff bears the burden of showing that the constitutional right allegedly violated was clearly established before the defendant acted or failed to act. This requires the plaintiff to offer either a closely analogous case or evidence that the defendants' conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts.

*Casteel v. Pieschek,* 3 F.3d 1050, 1053 (7th Cir.1993) (quotation marks and citations omitted), quoted in *Baxter by Baxter v. Vigo County School Corp.,* 26 F.3d 728, 737 (7th Cir.1994). The analysis requires two findings: that the alleged conduct violated a constitutional right; and that the right was

Supreme Court reversed, holding that prosecutors are entitled only to qualified immunity for actions undertaken in an investigative role rather than one intimately associated with the judicial phase of the criminal process. *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547. On remand, district judge Tinder granted defendant's motion for summary judgment, finding that qualified immunity insulated him from suit (Feb. 26, 1993 Order). It is that decision which we now consider on appeal.

clearly established at the time that the violation occurred. *Sherman,* 987 F.2d at 407. Failure on either prong will defeat the attempt to overcome immunity, which we review *de novo. Maltby v. Winston,* 36 F.3d 548, 555 & n. 7 (7th Cir.1994); *Rakovich v. Wade,* 850 F.2d 1180, 1204 (7th Cir.1988) (en banc), *certiorari denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534.

## I.

In seeking to demonstrate that hypnosis violated her constitutional rights, plaintiff offers a range of case law that proscribes in no uncertain terms the extraction of coerced confessions as a constitutional violation. See, *e.g., Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (use of physical torture to extract confession violates due process); *Rogers v. Richmond,* 365 U.S. 534, 540–541, 81 S.Ct. 735, 739–40, 5 L.Ed.2d 760 (coerced confessions "offend an underlying principle in the enforcement of our criminal law" and violate due process); *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (any confession which is "not the product of a free intellect" is inadmissible because coerced). Plaintiff points out, correctly, that psychological as well as physical pressure can overbear a suspect's will such that a resulting statement violates due process. "[N]either the body nor mind of an accused may be twisted until he breaks." *Culombe v. Connecticut,* 367 U.S. 568, 582, 81 S.Ct. 1860, 1867, 6 L.Ed.2d 1037; see *Arizona v. Fulminante,* 499 U.S. 279, 286–87 n. 2, 111 S.Ct. 1246, 1252 n. 2, 113 L.Ed.2d 302; *Smith v. Duckworth,* 856 F.2d 909, 912 (7th Cir.1988) (setting forth numerous relevant factors to be used in determining whether defendant's will was overborne, including age, educational level, intelligence, length of detention, duration of questioning, as well as existence of physical punishment or deprivation).

It is no small leap from this well-established, albeit heavily fact-dependent, body of due process case law, which generally proscribes the physical or psychological coercion of confessions, to the conclusion that statements elicited from a suspect under hypnosis are *per se* coerced or that the use of hypnosis on a suspect is *per se* coercive. Criminal interrogations often rely on tactics that are at least arguably manipulative and by definition designed to extract information from recalcitrant suspects, while still falling within the boundaries of what is constitutionally permissible. Hypnosis admittedly suffers from some unique defects—its known effects include increased suggestibility, a tendency to "confabulate" or fill in gaps with fictitious details, an inability to sift fantasy from fact and an unwarranted boost in the subject's confidence in what he is relating. See *Rock v. Arkansas,* 483 U.S. 44, 58–60, 107 S.Ct. 2704, 2712–14, 97 L.Ed.2d 37; *People v. Boudin,* 118 Misc.2d 230, 460 N.Y.S.2d 879, 881 (Sup.Ct.1983); Note, *The Admissibility of Hypnotically Induced Testimony,* 55 Tenn.L.Rev. 785, 791–794 (1988). Furthermore, subjects of hypnosis report an "experience of responding involuntarily." *Rock,* 484 U.S. at 59, 107 S.Ct. at 382 (citation omitted).[2]

The plaintiff in this case was allegedly subjected while in a vulnerable and highly suggestible hypnotic state to bullying and intimidation from the investigative officers, approved (and later concealed) by the defendant. This is a disturbing scenario that conceivably could skirt the edges of constitutional propriety. However, our inquiry directs us not only to the existence of a constitutional violation, but to its clarity in light of legal precedent in determining whether qualified immunity exists. Unlike the first question, this issue presents no difficulty.

## II.

To show that the law on a particular subject was clearly established, plaintiffs

---

**2.** This fact would seem to support plaintiff's contention that she was questioned against her will. We note that plaintiff did consent initially to the hypnosis, which militates against a conclusion that the session was coercive; persons who undergo polygraph examinations often "communicate" involuntarily, but their consent to be hooked up to the apparatus is deemed constitutionally acceptable. Still, eliciting verbal responses from a subject who has limited ability to control the direction or content of her thoughts is different from eliciting physical, nonverbal cues, and more troubling. For the reasons set forth below, however, we do not reach a conclusion on whether plaintiff was coerced.

are not required to supply case law on all fours with the facts and law involved. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523; *McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir.1992). Yet neither can they rely solely on a broadly worded proscription when the conduct in question is narrow and circumscribed. Plaintiff here must offer more than the fact that federal case law clearly frowns on coercive interrogation; she must demonstrate that coercive interrogation clearly includes hypnosis, and did so at the time of the events in question. State officials " 'need not predict [the law's] evolution, need not know that in the fight between broad and narrow readings of a precedent the broad reading will become ascendant.' " *Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir.1994) (quoting *Greenberg v. Kmetko*, 922 F.2d 382, 385 (7th Cir. 1991)).

■ Plaintiff thus would need to cite more specific precedent than the basic line of coercion cases to persuade this Court that the United States Constitution clearly proscribed hypnosis of a suspect at the time of her interrogation. Unfortunately for plaintiff, neither the federal nor the state case law she cites is up to the task. Our own search reveals that in 1982, the time of the complained-of conduct, courts were split on the validity of admitting confessions from suspects who complained that they had been hypnotized; but few, if any, courts posed the inquiry in constitutional terms—and several were unwilling to exclude statements from suspects who had been hypnotized. See *Coon v. State*, 380 So.2d 980 (Ala.Crim.App. 1979) (admitting confession of defendant whom police had previously hypnotized), *aff'd*, 380 So.2d 990 (Ala.1980), *and vacated on other grounds*, 449 U.S. 810, 101 S.Ct. 58, 66 L.Ed.2d 14; *People v. Norcutt*, 44 Ill.2d 256, 255 N.E.2d 442 (1970) (admitting confession over claims that it was obtained involuntarily, through hypnosis); *State v. Walker*, 416 S.W.2d 134 (Mo.1967) (admitting defendant's confession despite contention police had taken defendant to hypnotist); but see *Leyra v. Denno*, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954) (refusing admission of confession elicited through mental coercion); Comment, *Hypnosis of the Accused: Defen-*

*dant's Choice*, 75 J.Crim.L. 995, 1000 n. 22 (collecting other cases where courts excluded hypnotically induced confessions as unreliable).

The lone United States Supreme Court case to address the constitutionality of admitting a suspect's hypnotically refreshed testimony is similarly unavailing. That 1987 case, *Rock v. Arkansas*, held that a *per se* rule barring such testimony, which the state of Arkansas was enforcing to prevent the petitioner from introducing exculpatory evidence about her actions in the shooting death of her husband, violated the suspect's constitutional rights to testify and conduct a defense. 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37. The Supreme Court's lengthy discussion regarding the lack of consensus among courts and practitioners on the issue of whether hypnotically refreshed testimony should be admissible does little to bolster plaintiff's contention that the constitutionality of hypnosis, even of a suspect, was clearly established even by 1987. *Id.* at 57–58 & nn. 14–16, 107 S.Ct. at 2712 & nn. 14–16. *Rock*, which protected a suspect's right to undergo hypnosis for the purpose of bolstering her defense, further undermines plaintiff's claim that defendant should have been aware that the use of hypnosis would violate her constitutional rights.

Plaintiff also cites several Indiana cases that discuss hypnosis. These state law cases concern the evidentiary flaws inherent in hypnotically induced testimony. In *Pearson v. State*, 441 N.E.2d 468, 472 (Ind.1982), the Indiana Supreme Court noted that "hypnotically recalled testimony is often a mixture of fact and fantasy." In *Strong v. State*, that same court stated that "the better reasoned cases hold that evidence derived from a witness while he is in a hypnotic trance is inherently unreliable and should, therefore, be excluded as having no probative value." 435 N.E.2d 969, 970 (Ind.1982) (footnote and citations omitted). But see *Gentry v. State*, 471 N.E.2d 263 (Ind.1984) (although generally inadmissible at trial, evidence obtained through hypnosis may serve as basis for probable cause).

The gist of these cases appears to be that the Indiana Supreme Court has a strong

suspicion of the evidentiary value of hypnotically refreshed testimony, especially when unsupported by other evidence. Regardless of the wisdom of admitting hypnotically refreshed testimony, however, these cases are silent regarding the constitutionality of doing so. There is no language in any of the Indiana cases which even addresses the issue of whether a suspect may constitutionally be asked to submit to hypnosis. In sum, it certainly cannot be said that such a right was "clearly established" at the time of the alleged violation. For this reason, we affirm the district court's grant of summary judgment on the finding that defendant possessed qualified immunity from suit.

### III.

■ Plaintiff also asks this Court to deny summary judgment on the ground that defendant's actions in instructing the officers that they likely had probable cause to arrest her were clearly unconstitutional. This, too, is a question we review *de novo*. *Maltby v. Winston*, 36 F.3d 548, 555 & n. 7 (7th Cir. 1994). In retrospect, defendant may indeed have erred in concluding that the hypnotic session provided probable cause for the arrest. Qualified immunity, however, applies to officers who "reasonably but mistakenly conclude that probable cause is present." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589. Defendant's advice to the officers was a reasonable response to being informed that plaintiff had made inculpatory statements and to viewing the videotape in which she made these statements. Defendant relied not only on his own judgment, but on the authority of a trained psychiatrist who advised him that plaintiff presented strong signs of multiple personality disorder. In light of these facts, it appears that defendant acted reasonably in concluding that probable cause existed. We therefore affirm the district court's grant of summary judgment on behalf of defendant with respect to the probable cause finding, as well as to the authorization of plaintiff's hypnosis.