**Roosevelt LESTER, Plaintiff,**

v.

**Officer David BROWN, Star # 16013, individually, Officer Judith Buckner, Star # 5359, individually, and City of Chicago, a Municipal Corporation, Defendants.**

No. 93 C 7481.

United States District Court,
N.D. Illinois,
Eastern Division.

April 26, 1995.

# MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Roosevelt Lester brings this one count complaint against Officers David Brown and Judith Buckner under 42 U.S.C. § 1983, alleging a violation of his Fourth and Fourteenth Amendment rights.[1] Presently before us are the parties cross-motions for summary judgment. For the reasons set forth below, defendants' motion is granted and plaintiff's motion is denied.

## I. Background [2]

Larry Strong, a wheelchair-bound man living at 126 East 120th Place in Chicago, was shot and killed in his home on December 12, 1993 at approximately 5:50 p.m. Parties' Statement of Undisputed Facts ("Statement") ¶ 1. Defendants Brown and Buckner responded to the scene at approximately 6:00 p.m., and questioned two eyewitnesses of the crime: the victim's mother, Ethyl Strong, and the victim's twelve year old nephew, William Strong. They described the killer a black male, in his twenties, dark complected, 5' 8" to 5' 10" tall, approximately 160 pounds, with facial hair, wearing a camouflage army jacket, a dark skull cap and jeans.[3] Statement ¶ 6. After Officer Brown broadcast this description over his police radio, the two defendants got back in their car drove west on 120th Place towards State Street. Defendants reached the intersection of State and 120th Place, only two and one-half blocks from the murder scene, at approximately 6:20 p.m. and spotted plaintiff crossing the intersection. At that time Lester was wearing a camouflage army jacket, stood approximately 5' 8" tall, weighed approximately 160 pounds, and was dark complected with facial hair.[4] Statement ¶ 9. However, in contrast

Stanley L. Hill, Cherie E. Fletter, Stanley L. Hill & Associates, P.C., Chicago, IL, Jennifer H. Lee, O'Reilly, Cunningham, Norton & Mancini, Chicago, IL, Christopher Welling Graul, Chicago, IL, for Roosevelt Lester.

John F. McGuire, Alec Meacham MacAusland, Mary Margaret Murray, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, for David Brown, Judith Buckner.

Susan S. Sher, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, Donald Raymond Zoufal, Justin Paul Erbacci, Margaret Ann Carey, Patricia Jo Kendall, Irene Schild Caminer, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, for City of Chicago.

1. Counts II and III of the original complaint have previously been dismissed on plaintiff's own motion, thereby removing defendants Wilkins, Boylan and the City of Chicago from the case.

2. These facts are gleaned from the parties' agreed statement of facts, as well as from the unchallenged submissions made by defendants under General Rule 12(M) of the United States District Court for the Northern District of Illinois. However, many of the assertions made in Plaintiff's Rule 12(M) statement are specifically challenged by defendants in their Rule 12(N) response, and thus play no role in our decision.

3. In plaintiff's complaint, he alleged that the killer was also described as wearing a dark shirt and tennis shoes. However, the agreed statement of facts indicates that the killer's footware and shirt color was not included in the description given by the eyewitnesses at the crime scene. Statement, ¶ 6.

4. Prior to reaching the intersection of State and 120th Place, defendants had seen two other black men wearing camouflage army jackets. The first was spotted as defendants were initially on their way to the crime scene, and was not stopped because defendants did not have a description of the suspect and, in any event, the man was fair

the description given by the eyewitnesses, he wore cream colored corduroy slacks and was hatless. Statement ¶ 19. Defendants stepped out of their unmarked car, and as defendant Buckner drew her weapon they informed Lester that they were investigating a shooting in the area and asked him where he was coming from. Statement ¶¶ 11–13. Plaintiff repeatedly asked why he was being stopped, to which defendants responded that the shooting had occurred only a few blocks away from the intersection. Defendants' 12(M) ¶ 1. Plaintiff finally told them that he had just left his home and was on his way to purchase a cigarette lighter from a nearby store. Statement ¶ 14. Defendants then frisked plaintiff and reviewed his identification, which indicated that he was twenty years of age.[5] Statement ¶ 15; Plaintiff's 12(M) ¶ 3. Defendants also inspected plaintiff's wallet, and upon finding no money asked him how he planned to purchase a cigarette lighter without any cash. Defendants' 12(M) ¶¶ 3–4. Plaintiff responded that he had credit at the store, but defendants apparently were not convinced by this answer. Officers Brown and Buckner handcuffed plaintiff, placed him in their police car, and drove him to the scene of the shooting. Defendants' 12(M) ¶ 5.

Upon arriving at the victim's, defendants and other police officers sought to have the eyewitnesses identify Lester as the killer. Although Ethyl Strong was too upset to positively identify plaintiff as the assailant, William Strong did identify him as the man who killed his uncle.[6] Plaintiff was then transported to the police station, where he was later identified in a line-up by the victim's niece, Latasha Strong. Defendants' 12(M) ¶ 9. Lester was subsequently indicted for first degree murder, attempted armed robbery and home invasion. He was tried in

Cook County on October 23, 1993, and was acquitted the following day.

Plaintiff then filed the instant lawsuit, the only remaining count of which alleges that Officers Brown and Buckner arrested him on December 12, 1992 without probable cause. Although we denied defendants' motion to dismiss this count in our prior opinion, we were limited in our analysis to the allegations made by plaintiff in his complaint. As mentioned above, *supra* note 2, we may now rely on the parties' Statement of Uncontested Facts, as well as those portions of their Rule 12 statements which have not been challenged. Consequently, we are not bound by our prior characterization of the encounter between plaintiff and defendants, and will evaluate the additional facts and circumstances in order to ascertain whether summary judgment is appropriate.

## II. Summary Judgment Standard

A motion for summary judgment will be granted if "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c); *see Maxwell v. City of Indianapolis*, 998 F.2d 431, 433 (7th Cir.1993). In deciding a motion for summary judgment, the facts must be read in a light most favorable to the non-moving party. *Anderson v. Liberty Lob-*

---

complected. Defendants' Rule 12(N) Response, Exb. A at 34. The second individual was seen after defendants left the crime scene, and was described as 5' 7" tall, heavy-set, weighing approximately 230 pounds, with no facial hair. *Id.* at 34–35. Defendants claim that they did not question this second individual because he did not sufficiently match the description given by Ethyl and William Strong, *id.*, and plaintiff does not dispute this assertion.

5. In actual fact, plaintiff was thirty-six years old at the time of the incident. *See* Statement ¶ 9.

6. Apparently William Strong did not identify Lester at first, but simply noted the discrepancy in the clothing—e.g., the killer wore jeans but Lester wore brown corduroys. However, William Strong did eventually identify Lester as man he saw shoot his uncle. Defendants' 12(M) ¶ 7.

*by, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### III. Discussion

Plaintiff moves for summary judgment on his claim, asserting that the undisputed facts indicate that he was arrested without probable cause. Defendants oppose this motion, and also move for summary judgment on the issues of (1) whether they detained Lester in violation of the Fourth Amendment and (2) whether they are entitled to qualified immunity. We begin, and end, our analysis with the applicability of qualified immunity.

■ Public officials performing discretionary functions are shielded from civil liability arising out of their official actions so long as such conduct does not violate clearly established law. *Burns v. Reed,* 44 F.3d 524, 526 (7th Cir.1995). Qualified immunity will apply if "a reasonable officer could have believed that [the action taken was] lawful, in light of clearly established law and the information the officers possessed." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *Estate of Starks v. Enyart,* 5 F.3d 230, 233 (7th Cir.1993). To be "clearly established," a constitutional right "must be identified in a particularized sense with respect to the circumstances of the alleged violation. In other words, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Burns,* 44 F.3d at 526 (quoting *Casteel v. Pieschek,* 3 F.3d 1050, 1053 (7th Cir.1993)). Plaintiff bears the burden of showing that a particular right was both (1) violated and (2) clearly established at the relevant time, and the failure to sustain the burden on either prong will lead to the imposition of qualified immunity. *Burns,* 44 F.3d at 526–27. The Supreme Court has repeatedly stressed that qualified immunity, which is a question of law, should be resolved at the earliest possible point in the litigation. *Hunter v. Bryant,* 502 U.S. 224, 226–29, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991).

Defendants contend, and plaintiff does not dispute, that their initial questioning of him did not constitute a "seizure" in any constitutional sense. *See Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). Nor can plaintiff seriously challenge his arrest after being identified by William Strong at the scene of the crime. *Cf. Hebron v. Touhy,* 18 F.3d 421, 422 (7th Cir.1994) (complaints by witnesses normally establish probable cause). The disagreement between the parties centers on the events that took place just after the initial questioning of Lester, when defendants handcuffed him and drove him to the crime scene for identification. Defendants argue that plaintiff was merely the subject of an investigatory stop, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), while plaintiff contends that at this point he was arrested and "seized" for purposes of the Fourth Amendment. Although we previously characterized this confrontation as an arrest in our order denying defendants' motion to dismiss, the parties have presented additional facts which warrant our revisiting the issue.

■ Police officers need not always have probable cause—a reasonable belief, based on the totality of the circumstances, that a particular individual has committed as crime—in order to detain that person. Where officers can " 'point to specific and articulable facts' that give rise to a reasonable suspicion of criminal activity," they may conduct an investigatory stop of the person in order to satisfy their suspicions. *United States v. Tilmon,* 19 F.3d 1221, 1224 (7th Cir.1994) (quoting *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880). To be sure, police officers may use some amount of force in order to effectuate a *Terry* stop. *See Tom v. Voida,* 963 F.2d 952, 958 (7th Cir.1992). But if the force employed is objectively unreasonable or the detention lasts too long, then the stop will ripen into a de facto arrest requiring probable cause. *United States v. Robinson,* 30 F.3d 774, 784 (7th Cir.1994).

■ In the instant case the characterization of the encounter between Lester and Officers Brown and Buckner is critical, as the two officers had a "reasonable suspicion supported by articulable facts" that Lester was the killer: he matched the description of the suspect's race, sex, apparent age, height, facial appearance, and clothing, and was spot-

ted only two and one-half blocks from the crime scene. Moreover, plaintiff repeatedly asked why he was being stopped, a course of conduct that Officer Buckner found unusual and evasive, Defendants' 12(M) ¶ 1, and stated that he was on his way to purchase cigarette lighter although he had no money in his possession. However, given the additional discrepancies between plaintiff and the eyewitness description, such as the color of his slacks, the lack of a hat and his actual age, the officers may not have had probable cause to arrest Lester at that point. *See Maxwell,* 998 F.2d at 434-35 (summary judgment inappropriate where physical description of fugitive differed from arrestee).

■■■ Thus, we turn our attention to whether the amount of force used to detain Lester was reasonable in order to effectuate an investigatory stop. "In general, the reasonableness of a search or seizure is determined by considering whether the degree of well-founded suspicion of criminal activity is sufficient to justify the degree of intrusiveness of the challenged police conduct." *United States v. James,* 40 F.3d 850, 875 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 948, 130 L.Ed.2d 891 (1995), *and cert. denied,* — U.S. —, 115 S.Ct. 1160, 130 L.Ed.2d 1116 (1995). Officers faced with evolving situations "are permitted to graduate their responses to the demands of the particular circumstances confronting them." *Tilmon,* 19 F.3d at 1226 (quoting *United States v. Weaver,* 8 F.3d 1240, 1243 (7th Cir.1993)). In the instant case defendants were investigating the brutal shooting of a disabled man, and spotted Lester near the crime scene some thirty minutes after the shooting. Officer Buckner approached plaintiff with her gun drawn, but this was not an unreasonable precaution given the nature of the crime and the similarity between plaintiff's appearance and the description of the killer. *See Tilmon,* 19 F.3d at 1227 (drawing of weapons on suspected bank robber who threatened to use explosives was not unreasonable); *United States v. Serna–Barreto,* 842 F.2d 965, 968 (7th Cir.1988). After plaintiff acted evasive in responding to defendants' questions, produced identification that corresponded with the eyewitnesses' description of the shooter, and purported to be going shopping despite the fact that he carried no money, defendants handcuffed Lester and placed him in the police car. The use of handcuffs does not necessarily convert an investigatory stop into an arrest. *See James,* 40 F.3d at 875 ("[H]andcuffing a suspect in order to search his person does not transform a *Terry* stop into a full custodial arrest, provided the use of handcuffs is reasonably necessary to assure of the safety of officers or bystanders."); *Tilmon,* 19 F.3d at 1228; *United States v. Smith,* 3 F.3d 1088, 1094–95 (7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 733, 126 L.Ed.2d 696 (1994); *but see United States v. Glenna,* 878 F.2d 967, 972 (7th Cir.1989) (describing such instances as "rare"). Indeed, courts have exhibited a growing acceptance of the use of handcuffs in effecting *Terry* stops. *See Tilmon,* 19 F.3d at 1228. However, we need not decide whether the instant case falls within the category of situations where handcuffs may be used to effectuate an investigatory stop. Considering the totality of the circumstances facing defendants at this juncture, and the acceptance by December 1993 of the use of handcuffs to effectuate *Terry* stops, we conclude that a reasonable police officer in the defendants' position could have believed that his conduct was constitutional. *See Hunter,* 502 U.S. at 228, 112 S.Ct. at 537 (holding reasonable decisions, even if mistaken, to be entitled to qualified immunity); *Burns,* 44 F.3d at 529. There was no closely analogous case law at that time holding defendants' conduct unconstitutional, nor were their actions so blatantly violative of the Fourth Amendment as to have put Brown and Buckner on notice that they were acting unconstitutionally. *See Jones by Jones v. Webb,* 45 F.3d 178, 184 (7th Cir.1995) (applying qualified immunity because plaintiff failed to present closely analogous case law or demonstrate that defendant's actions were "so plainly excessive" to put him on notice). As plaintiff has failed to satisfy his burden of demonstrating that no reasonable police officer could have believed that handcuffing Lester and placing him in the police car was constitutional, qualified immunity should apply. Accordingly, we hold that defendants

are shielded from civil liability on Count I due to their qualified immunity.

## IV. Conclusion

For the reasons set forth above, plaintiff's motion for summary judgment is denied, and defendants' motion for summary judgment on the issue of qualified immunity is granted.[7]  It is so ordered.

---

7.  Plaintiff also moves for sanctions pursuant to Fed.R.Civ.P. 11, arguing that defendants are simply presenting the same issues that were raised in the motion to dismiss.  Because defendants' motion for summary judgment was not based on the same facts as were presented in the motion to dismiss, and plaintiff's prayer for sanctions does not comply with the requirements of Fed. R.Civ.P. 11(c)(1)(A), this motion is denied.