**Roosevelt LESTER, Plaintiff,**

v.

**CITY OF CHICAGO, Defendant.**

**No. 95 C 6755.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 13, 1997.

---

Stanley L. Hill, Stanley L. Hill & Associates, P.C., Chicago, IL, Robert D. Whitfield, Chicago, IL, John M. Beal, Chicago, IL, for Roosevelt Lester.

Thomas R. Samson, Alec McAusland, City of Chicago, Law Department, Chicago, IL, John F. McGuire, City of Chicago Law Department, Chicago, IL, for David Brown, Judith Buckner, Jack Willkins, and James Boylan.

Irene Schild Caminer, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, Sharon Baldwin, Margaret Ann Carey, Patricia Jo Kendall, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, Susan S. Sher, Corporation Counsel, Chicago, IL, for City of Chicago.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Roosevelt Lester brings this 42 U.S.C. § 1983 action against the City of Chicago, alleging that certain policies of the Chicago Police Department caused a violation of his constitutional rights. Presently before this court is the City's motion for summary judgment. For the reasons stated below, we grant the motion.

### I.

We detailed the background of this case in *Lester v. Brown (Lester II)*, 929 F.Supp. 291 (N.D.Ill.1996), and for brevity's sake summarize only the pertinent facts. In late 1993, Lester brought an action against individual police officers and the City under § 1983. As the litigation proceeded, we dismissed the action as to two officers for want of prosecution, and the plaintiff voluntarily dismissed the City. In April 1995, we granted summary judgment to the two remaining officers on the basis of qualified immunity, *Lester v. Brown (Lester I)*, 889 F.Supp. 1039 (N.D.Ill. 1995), and later denied a motion for reconsideration, No. 93 C 7481, 1995 WL 447764 (N.D.Ill. July 26, 1995). In October 1995, the plaintiff filed in state court the instant action, which was removed and eventually assigned to this court. On March 28, 1996, we dismissed the individual defendants on claim preclusion grounds, leaving only the City as a defendant.

The facts underlying this suit arise from the investigation of the murder of Larry Strong, who was shot and killed on December 12, 1992. Def.'s 12(M) ¶ 13.[1] After ar-

---

1. Under Local General Rule 12(M), a party moving for summary judgment must submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." The nonmovant must then specifically respond to each of the movant's factual asser-

tions, and include, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 12(N)(3)(a). The facts asserted in the movant's 12(M) Statement will be deemed admitted if the nonmovant's responses do not contain citations to specific portions of

riving at the crime scene, Chicago police officer David Brown obtained a description of the shooter from the victim's mother, Ethel Strong, and the victim's nephew, William Strong. *Id.* ¶ 18. According to the description, the shooter was a "male, black, in his 20s, dark complexion, 5′8″ or 5′10″, 160 lbs., with facial hair, wearing camouflage army jacket, a dark colored skull cap and jeans." *Id.* ¶ 19.[2] Brown and a fellow officer, Judith Buckner, then surveyed the area for persons matching the description and found Lester less than three blocks from the scene. *Id.* ¶¶ 21, 23. At that time, Lester was wearing a camouflage army jacket, was approximately 5′8″ tall, had a dark complexion, facial hair, weighed approximately 160 pounds, and was 36 years old. *Id.* ¶ 24. Contrary to the initial description, however, the plaintiff was not wearing blue jeans or a skull cap. Pl.'s 12(N) ¶ 7(a), (c).

After questioning Lester, the officers handcuffed him and brought him to the Strong residence in order to determine whether the eyewitnesses could identify him. Def.'s 12(M) ¶ 34. According to Brown, William Strong identified Lester as the shooter immediately, while the plaintiff contends that William did not identify Lester until prodded by Brown. *Id.* ¶¶ 38–39.[3] Later in the evening, the victim's niece, Latasha Strong, identified Lester without hesitation from a

five-man line-up. *Id.* ¶ 47, 54. During the early hours of December 13, Assistant State's Attorney Guy Miller approved charges of home invasion, attempted armed robbery, and murder after interviewing the officers, detectives, and witnesses. *Id.* ¶¶ 67–74. Later that day, a state court judge found probable cause to detain Lester, and on December 23, the grand jury returned an indictment on the charges. *Id.* ¶¶ 75–76. After a jury trial, Lester was acquitted of all charges. *Id.* ¶ 80.

## II.

As we explained above, this action is the plaintiff's second filing based on these events, and the sole remaining claim is against the City. Entitled "False Imprisonment," Count IV alleges that various "policies, practices or customs of the City of Chicago, through its Police Department," were "maintained and implemented with deliberate indifference and encouraged the ... constitutional violations" committed by the individual officers; thus, the policies, practices, and customs caused the violations. Compl. ¶¶ 30–31. According to the City, these and other allegations made by the plaintiff are unsupported by evidence so that no genuine issue of fact remains for trial.[4] Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a

---

the record supporting the contrary position. *Skagen v. Sears, Roebuck & Co.*, 910 F.2d 1498, 1500 (7th Cir.1990). In addition, under Local Rule 12(N)(3)(b), the nonmovant may submit a statement of additional facts that the nonmovant contends require denial of the motion, and Local Rule 12(M) provides that the movant may likewise respond to the 12(N)(3)(b) statement. We note here that, although the City maintains that Lester is bound by judicial admissions he made in the prior case involving different defendants, formal admissions made in that action do not bind the plaintiff in this action. *See Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir.1996) (statements that are judicial admissions made in one lawsuit are not judicial admissions in another).

2. Although the plaintiff denies that the Strongs provided that description to Officer Brown, the plaintiff points only to the deposition testimony of another officer who was referring to a police report during the deposition. *See* Pl.'s 12(N) ¶ 6. That police report was completed by two other officers—not Officer Brown—and thus does not

bring into question Officer Brown's account of the description provided to him.

We should note here that the plaintiff's 12(N) Statement does not mirror, as it ideally should, the paragraph numbering of the defendant's 12(M) Statement. For example, paragraph 6 of the plaintiff's 12(N) Statement responds to paragraph 19 of the defendant's 12(M) Statement.

3. Lester contends that the following exchange took place after Brown asked William whether the plaintiff was the killer. "William replied: 'the other guy had a beard like this guy,' and 'the other guy had on blue jeans.' Plaintiff said: 'I got on corduroy.' William said: 'The other guy had a dark shirt.' Plaintiff said: 'I got a red shirt.' Brown said to William: 'Look at his face.' William replied: 'It looks like him.' Brown replied: 'Then its him, right? It's him.' William replied: 'Yeah, it[']s him.' " Def.'s 12(M) ¶ 39.

4. In light of our holding, we need not conclusively decide the City's alternative arguments.

matter of law. Fed.R.Civ.P. 56(c). Material facts are those conclusive of the outcome of an issue as determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the court must read the facts in the light most favorable to the nonmoving party, *id.* at 255, 106 S.Ct. at 2513–14, and refrain from making credibility determinations, *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992).

■ Although a municipality is a "person" under § 1983, vicarious liability is not available under that section. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989). Instead, a municipality is liable only for constitutional violations caused by its policies. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

The caselaw has identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law' "; or (3) an allegation that the constitutional injury was caused by a person with "final policy-making authority."

*Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734–35 (7th Cir.1994) (citations omitted). As these three categories and the text of § 1983 suggest, a "custom or usage" may still constitute the basis for municipal liability even in the absence of an express policy or of an act committed by a final policymaker. However, "isolated" acts committed by nonpolicymaking officials generally do not amount to a "custom," which " 'implies a habitual practice of a course of action that characteristically is repeated under like circumstances.' " *Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir.1990) (quoting *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir.1986)). Furthermore, a municipality's failure to train its police may also form the basis for municipal liability, but only where the failure exhibits "deliberate indifference" to the constitutional rights of persons with whom the police encounter. *City of Canton v. Harris*, 489 U.S. at 388, 109 S.Ct. at 1204.

■ In light of these principles, and after reviewing the parties' briefs and evidentiary submissions, we conclude that no genuine issues of material fact exist as to whether the City's policies or customs caused the plaintiff to suffer a violation of his constitutional rights. Although it is unclear whether Lester grounds municipal liability on an express policy, custom, failure to train, or some other theory, *see* Pl.'s Br. at 10–13, none of the evidence relied upon by the plaintiff would permit a reasonable factfinder to find liability.[5] For each alleged policy or custom identified in the complaint, Compl. ¶ 30(a)–(j), the plaintiff "cannot identify other than his own situation instances of where the police" committed the same acts or failed to act, Def.'s 12(M) ¶¶ 117–26; Pl.'s 12(N) ¶ 34. Lester instead relies only on a purported inference he draws from the deposition testimony of Lieutenant Joseph Murphy, the police commander of the area in which the Strong murder occurred. During the deposition, Murphy acknowledged that "based upon [his] review of the report [he] looked at today, . . . the actions of the police officers involved in the Lester arrest [were] consistent with the policies and practices of the Chicago Police Department." Pl.'s 12(N), Murphy Dep. at

---

5. We note that the plaintiff attempts to rely on the deposition testimony of former police superintendent Richard Brzeczek in order to show that the City evaluates an officer's performance based in part on the number of arrests made. Pl.'s 12(N) Additional Facts ¶ 15. However, Magistrate Judge Keys, acting on our referral of the City's motion, disallowed the plaintiff's use of Brzeczek as a witness because his use as a witness was untimely disclosed. Discovery Order at 3–4 (Docket Entry 42) (Nov. 5, 1996). The plain-

tiff failed to object to that order, and we thus will not consider Brzeczek's testimony. We also deny the plaintiff's tardy motion [50–1, 2] to permit him to use Brzeczek's testimony or to extend discovery. In any event, even after all the discovery taken in this litigation, the plaintiff still does not point to any evidence that a performance evaluation based on the number of arrests amounted to "deliberate indifference" of the constitutional rights of those whom the police encounter.

161–62 (attached to 12(N) as Ex. A). Relying on this statement, and pointing out that the plaintiff's version of the events amounted to an infringement of his constitutional rights, the plaintiff argues that Murphy has admitted that the City's policies caused the violations. Pl.'s 12(N) ¶ 34. However, as the quoted excerpt shows, Murphy based his conclusion on the police reports shown to him at the deposition, *see* Murphy Dep. at 24–26, 35, 41, 76–77, 161–62, *not* on the plaintiff's version of the facts.[6] Those reports do not themselves reflect any policies or customs that caused Lester to suffer constitutional injury.[7] Accordingly, Lester has failed to raise any genuine issues as to whether the City's policies or customs caused the constitutional violations he allegedly suffered. We enter summary judgment for the defendant.

It is so ordered.

---

**6.** Although it appears on one of the police reports that investigating officers attempted to verify Lester's alibi for the wrong date, Supp. Report (written report reflects police checked alibi for one day after murder) (attached to 12(N) as Ex. E), Murphy believed that the report contained a typographical error and that the officers did in fact check the alibi for the date of the crime, Murphy Dep. at 79–84. Regardless of whether the officers committed a typographical error rather than the far worse sin of bungling the alibi investigation, Murphy's conclusion regarding the City's policies were based on his belief that the officers accurately investigated the alibi.

**7.** While the plaintiff also argues in his brief that the City failed to adequately supervise its officers' alibi investigations, he again does not point to evidence showing that the alleged failure caused him or any other persons to suffer a constitutional violation.