

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| IN THE INTEREST OF: D.D.B. | ) | No. ED110414 |
| | ) | |
| | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| | ) | 2122-JU00442 |
| | ) | |
| | ) | Honorable Steven R. Ohmer |
| | ) | |
| | ) | Filed: February 7, 2023 |

## OPINION

D.D.B. (Appellant) appeals from the order of the Circuit Court of the City of St. Louis dismissing the petition filed against him as a juvenile, and certifying him as an adult to allow for his prosecution in a court of general jurisdiction. We affirm.

## Background

The facts in evidence and all their reasonable inferences are viewed in the light most favorable to the trial court's judgment when reviewing the sufficiency of the evidence. *Interest of T.D.S.*, 643 S.W.3d 510, 523 (Mo. App. E.D. 2021).

On October 2, 2021, St. Louis City's Juvenile Officer (Juvenile Officer) filed a petition (Juvenile Petition) against Appellant pursuant to Section 211.031.1(3), RSMo Cum. Supp. 2021, seeking exclusive jurisdiction of Appellant in the Family Court – Juvenile Division (juvenile court) of the Circuit Court of the City of St. Louis. The Juvenile Petition alleged Appellant –

born May 12, 2004, and 17 years old at that time – committed the delinquency offense of robbery in the first degree, in violation of Section 570.023, RSMo Cum. Supp. 2017, for forcibly stealing property. It was filed with a probable cause affidavit of the responding police officer stating on October 1, 2021, Appellant followed his victim (Victim) on foot and demanded weed. When Victim said no, Appellant held a black gun to his chest and demanded Victim's bag. The responding officer found Appellant at a nearby apartment complex with Victim's bag and ID.

The Juvenile Petition was later amended to include allegations that on February 5, 2022, Appellant committed the offenses of escape from custody, in violation of Section 575.200, RSMo. Cum. Supp. 2017, and stealing more than $150, in violation of Section 570.030, RSMo Cum. Supp. 2021. Another probable cause affidavit was filed, stating that Appellant and several juveniles escaped from the Juvenile Detention Center when the supervisor opened the door for Appellant to use the telephone. Appellant chased the officer who feared for his safety, took his keys and freed his fellow juvenile detainees. After officers pursued the juveniles on foot, Appellant was safely taken into custody.

About two weeks after the original Juvenile Petition was filed, on October 18, 2021, the Juvenile Officer filed a motion to dismiss the Juvenile Petition to allow prosecution of Appellant under general laws (Motion to Dismiss). On February 14, 2022, the Juvenile Officer amended the Motion to Dismiss to add the escape and stealing allegations to its motion seeking adult certification (Amended Motion to Dismiss).

A certification hearing was held on February 28, 2022, to determine whether Appellant should be prosecuted under general laws. Deputy Juvenile Officer Juanell Pugh (DJO Pugh) was assigned to give recommendations for detention, certification and disposition. He testified at the hearing about his investigation of Appellant's social file, review of records from the Division of

Youth Services (DYS), meetings with Appellant's mother, and notes from two prior involvements with Appellant. DJO Pugh also submitted a 17-page report as an exhibit, which was admitted into evidence subject to Appellant's objections of hearsay, speculation, and legal relevance.[1]

DJO Pugh explained the charges against Appellant, and answered affirmatively when asked if the incidents involved force, viciousness, or violence when he produced a firearm and demanded property of a person on the street. DJO Pugh had been in contact with Appellant's mother, who was able to maintain control of her son when he was in her custody, but explained that he used his "ambiguity" in traveling between her home and his father's home as a chance to manipulate and get caught up in negative behaviors. Appellant's father had been released from prison recently and they were working on a relationship.

DJO Pugh testified that Appellant had a total of fifteen delinquency referrals overall, including the following:

- October 17, 2011: unlawful use of a weapon (class D felony) (St. Louis County);

- December 9, 2016: theft and stealing less than $500; received informal supervision from December 2016 to April 2017, but terminated when Appellant generated a new law violation (St. Louis County);

- April 22, 2017: burglary second degree, property damage second degree, and resisting custody; amended to stealing (class A misdemeanor) and resisting (class A misdemeanor); property damage dismissed. Appellant was detained for a short time

---

[1] Appellant objected that DJO Pugh did not have personal knowledge to the portion of the report stating that Appellant was not enrolled in school since his release from DYS and DYS had no success in getting Appellant to enroll in educational programs. Appellant further objected, and the court sustained the objection, that the statement, "[Appellant] has engaged in various gang behaviors while in detention. . ." was speculative and hearsay. Finally, Appellant objected that the summary at the end of the report invaded the province of the fact finder with opinions of DJO Pugh, who was not endorsed as an expert, in violation of Section 490.065, but the objection was overruled.

then entered intensive supervision from June 2017 to June 2018, successfully completed, but unsuccessfully completed the Evening Reporting Center and GPS Monitoring Programs. Appellant generated a new referral and was ultimately placed at Great Circle, a St. James residential facility, from August 2017 to June 2018, successfully completed;

- April 25, 2017: theft stealing less than $500; stealing (class A misdemeanor), rejected (St. Louis County);

- May 30, 2017: unlawful use of a weapon exhibiting; unlawful use of a weapon; carrying a loaded weapon into a school bus, premises of a school (class E felony); trespass (ordinance violation); peace disturbance, first offense (class D misdemeanor); no action taken;

- July 5, 2017: tampering with electric monitoring equipment (class D felony), a juvenile supervision technical violation; dismissed but adjudicated on a formal supervision technical violation;

- July 29, 2017: status offense for behaviors injurious (St. Louis County, transferred to the City of St. Louis but not added to the current petition);

- July 31, 2017: stealing (class A misdemeanor); resisting or interfering with arrest, detention or stop (class A misdemeanor) (St. Louis County). Allegations were dismissed, but, they occurred while Appellant was on intensive supervision for the April 22, 2017 referral, and then Appellant was placed at Great Circle as a result;

- March 5, 2018: charged with being habitually absent from home, due to Appellant absconding from Great Circle (Phelps County); no action was taken on the referral, Appellant was simply returned to placement;

4

- December 4, 2018:  stealing $750 or more (class D felony) (St. Louis County, transferred to St. Louis City, which dismissed the petition);

- April 23, 2019:  tampering second degree (class A misdemeanor); behaviors injurious to self or others; resisting or interfering with arrest, detention, or stop (class A misdemeanor); allegations dismissed;

- May 9, 2019:  tampering second degree, currently unresolved, but DJO Pugh believed no action was taken on that referral overall, it was just not in the system;

- May 13, 2019:  robbery first degree (class A felony).  Adjudicated on 8/19/19, and it was amended down to stealing or physically taking from a person (class D felony).  Appellant was detained for approximately four months during that time and rendered psychological services and participated in the Epworth Children Services Bullying Group Program, and he was committed to DYS on 8/19/19;

- July 21, 2020:  attempted robbery first degree (class B felony); robbery first degree (class A felony); and escape or attempted escape from confinement of DYS (class E felony); all of those allegations were rejected or dismissed.  Appellant was detained from 7/21/20 until 7/24/20 in the St. Louis City Detention Center.  He was returned to the custody of DYS from which he had absconded on 5/18/20.  DJO Pugh believed from approximately 5/18/20 to 7/21/20, Appellant had been missing from DYS custody;

- August 19, 2020:  habitually absent from home (St. Louis County), referral was rejected;

- July 14, 2021:  tampering first degree, and stealing misdemeanor (St. Louis County), rejected;

- August 26, 2021: tampering first degree (class D felony); resisting arrest, detention or stop by fleeing, creating a substantial risk of injury or death to any person (class E felony) (St. Charles County), allegations were dismissed. DJO Pugh believed dismissal was due to a faulty affidavit;

- August 30, 2021: three counts of property damage first degree; three counts of damage to a motor vehicle with intent to steal (class D felony); three counts of stealing (class A misdemeanor) (St. Louis County), ultimately rejected;

- September 22, 2021: tampering second degree (class A misdemeanor) (St. Louis County). DJO Pugh explained, however, it was not added to the court's referral history, and he believed no action was taken.

DJO Pugh explained Appellant already had two different stints in two different facilities. He had been placed on intensive supervision, but elevated to residential placement at Great Circle as a result of new referrals for cutting off his GPS bracelet. There, he also had an issue with absconding, but the referral was dismissed when he was returned to custody. He was also placed in residential custody of DYS in 2019 until approximately December 2020, when he was placed on "aftercare." DJO Pugh said DYS offers individual and group counseling to every child that comes to their residential facility. He was also offered psychiatric services, including medication, and educational services. DJO Pugh explained that although his discharge was considered successful at that point, he would not call it entirely successful given the issue Appellant had with absconding and the length of time it took him to complete the services.

DJO Pugh testified that Appellant's last available school records in the City of St. Louis were prior to his entry into DYS, in the spring of 2019 at Confluence Academy downtown. Since his release to the public, "[h]e has not attended any school in any sort of form or fashion."

6

Although Appellant wished to complete high school, his mother had difficulty motivating him to enroll due to his fear of street retaliation.

DJO Pugh testified that Appellant had been diagnosed with an intellectual disability, moderate conduct disorder, and ADHD. Appellant was never enrolled in special education classes, nor did he have an Individual Education Plan (IEP). School records showed several failing grades other than health and P.E., and disciplinary problems including one suspension for smoking marijuana on the bus and jumping off when confronted, and another suspension for threatening a teacher.

DJO Pugh attempted to discuss Appellant's charges with him personally on a weekly basis since Appellant was detained, but he refused to talk with him on more than ten occasions. Appellant spoke with him only when he needed information. Given the charge added for his escape from the detention facility, DJO Pugh said there was no way he could describe Appellant's behavior as satisfactory. He also received a number of DYS behavioral reports, for example, for banging on the door and yelling to create a general disruption of his unit, for punching a peer just after he exited the bathroom, and for stuffing cards into his door lock mechanism to cause it to malfunction. Appellant had recently completed a urine drop, which detected marijuana metabolites as well as oxycodone.

DJO Pugh said Appellant was 17 years and 4 months when the alleged offense occurred, and at the hearing he was 17 years and 9 months. Appellant's birth certificate was admitted as Exhibit 2. DJO Pugh testified he was not aware of any private residential facility in Missouri that he believed would be able to provide long-term care and structure due to Appellant's advanced age and level of charges. DJO Pugh also claimed no Missouri private juvenile residential facility would be available to take anyone over the age of 18 "because that would

7

create a liability with the children that are there under the age of 18, especially in combination with the seriousness of these charges." DJO Pugh also believed Appellant needed a longer length of secured detention to be rehabilitated and that the three months until Appellant's birthday would not be adequate. "And that would be a dangerous proposition, I believe, to place him in that, especially given the fact that he's had an issue with absconding from them in the past," he added. Additionally, DYS would lose jurisdiction after a year and three months, DJO Pugh testified, so DYS was not appropriate. Although it was possible to petition for DYS to keep a juvenile until age 21, DJO Pugh stated it was not common and to his knowledge has only been successfully utilized for medical services.

DJO Pugh testified that Appellant had been in some form of residential or detention treatment since he's been involved with the court, which added up to a total of more than 344 days as a result of his behavior. DJO Pugh also said the current charge was a robbery first degree, a class A felony, which usually results in a sentence of around ten years or more. DJO Pugh recommended Appellant be certified as an adult and prosecuted under general laws. He believed this was in Appellant's best interest and necessary to protect the community. "[F]rankly I don't think we have any programs that can contain him at this point securely enough to get him into a position to be rehabilitated. And for that reason I just don't think we have anything available," DJO Pugh stated.

On cross-examination, DJO Pugh admitted that many of the referrals listed did not result in adjudications. Appellant submitted a letter from Great Circle stating that Appellant was ready for discharge.

On March 8, 2022, the juvenile court issued its order dismissing the petition filed in juvenile court to allow for prosecution under general laws. The order included numerous

8

findings related to the factors listed in Section 211.071.6, RSMo Cum. Supp. 2021,[2] to determine whether Appellant is the proper subject to be dealt with under the juvenile law and whether there are reasonable prospects for rehabilitation within the juvenile justice system. The court specifically noted in its judgment, "It is not a prerogative of the Juvenile Court to make the determination in a dismissal proceeding whether the Juvenile is guilty of the offenses charged." The court added that it must, however, review the evidence on the basis of Appellant's involvement in the crime charged and "determine whether if the juvenile is eventually found to have committed the crime, would be a fit subject to be dealt with under the juvenile code." *State v. Tate*, 637 S.W.2d 67, 71 (Mo. App. E.D. 1982) [overruled on other grounds, *State v. Carson,* 941 S.W.2d 518, 520 (Mo. banc 1997)]."

Pursuant to Section 211.071.6,[3] the court made the following findings:

1)  The conduct alleged to be committed by Appellant, robbery first degree and attempted escape from custody, class A and class E felonies, were offenses "of a type that involves

---

[2] All further references to Section 211.071 are to RSMo Cum. Supp. 2021.

[3] Subsection 6 of Section 211.071 states that the court shall consider the written report in determining whether the child is a proper subject to be dealt with under the juvenile law, including but not limited to these criteria:

> (1) The seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction;
> (2) Whether the offense alleged involved viciousness, force and violence;
> (3) Whether the offense alleged was against persons or property with greater weight being given to the offense against persons, especially if personal injury resulted;
> (4) Whether the offense alleged is a part of a repetitive pattern of offenses which indicates that the child may be beyond rehabilitation under the juvenile code;
> (5) The record and history of the child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions and other placements;
> (6) The sophistication and maturity of the child as determined by consideration of his or her home and environmental situation, emotional condition and pattern of living;
> (7) The age of the child;
> (8) The program and facilities available to the juvenile court in considering disposition;
> (9) Whether or not the child can benefit from the treatment or rehabilitative programs available to the juvenile court; and
> (10) Racial disparity in certification.

a need to protect the community," and that stealing the keys of the juvenile detention center facility while in custody for robbery were serious offenses.

2) The conduct alleged involved "viciousness, force and violence" as the robbery involved the display of what appeared to be a deadly weapon and the escape involved a confrontation with a detention youth worker.

3) The conduct alleged to be committed by Appellant was robbery in which a weapon was displayed to forcibly obtain property from the victim, which was clearly against a person. While no physical injury resulted, personal injury still happened. Further, the confrontation of a youth worker in the escape also resulted in personal injury although no physical injury. The court gave greater weight to the offenses against a person.

4) Appellant had previously been adjudicated in 2019 for stealing from a person, a class D felony, which was amended from robbery first degree, a class A felony. Further, Appellant was detained in July 2020 for robbery first degree and attempted robbery first degree and escape from confinement of DYS, which was rejected/dismissed upon being returned to DYS after his absconding in May 2020. This history exhibited a pattern of conduct over several years for serious offenses and indicated that rehabilitation within the juvenile system would be fruitless.

5) Appellant has had numerous formal and informal referrals to the juvenile court, adjudicated twice previously on reduced felony charges, and a number of referrals where the allegations were dismissed or rejected over the course of four years. Although he completed DYS in 2020, he escaped during the program; although he made great progress at Great Circle and was discharged successfully in 2020, similar conduct has

10

continued unabated. Appellant's contact with the juvenile court, therefore, has exhausted its ability to rehabilitate him.

6) The evidence of Appellant's home life indicated that he did not have a stable home. His mother and father were present for the hearing but his mother was unable to control Appellant and father had not been in his life until very recently. The serious offenses of robbery first degree and escape from custody "indicates a sophistication and maturity beyond his years."

7) Appellant was 17 years and 9 months of age at the time of the hearing; he was 17 years and 4 months of age at the time of the alleged robbery, and 17 years and 8 months at the time of the escape. "The age of the juvenile neither precludes nor requires certification," the court concluded.

8) Appellant needed long-term care and structure. DJO Pugh has been dealing with Appellant since his first adjudication in April 2017, and seen serious conduct progression. No private facility with a long-term structured program was available. DYS could only retain jurisdiction over a youth until the age of 18, but "the safety of the community demands that he be in a longer-term environment." The court found the seriousness of the conduct exhibited the inability for rehabilitation within the juvenile justice system. "The conduct of the Juvenile in the Juvenile Detention clearly shows that there are no programs or facilities available within the juvenile justice system for the Juvenile," the court stated.

9) DYS may retain jurisdiction over Appellant after the age of 18 by petitioning the court to maintain custody until age 21, but it was not required to do so. DYS placement of Appellant in the community was an insufficient long-term structured environment for

11

Appellant to benefit from a rehabilitative program available to the juvenile court and insufficient structure to protect the community. "The conduct of the Juvenile within the Detention Center speaks for itself and consequently the resources in the Juvenile Justice system have been exhausted." The court further noted that "[a]nything herein to the contrary notwithstanding, the services necessary to rehabilitate Juvenile may be available in the dual jurisdiction program under RSMo., Section 211.073."

10) The court found Appellant's race or gender, as well as the alleged victims' race or gender, were not factors in the Juvenile Officer's determination of which charges to allege against Appellant, or whether to seek certification.

The court concluded "there can be no reasonable prospect of rehabilitation within the juvenile justice system," and the court could no longer retain jurisdiction and must certify him as an adult to be tried by a court of general jurisdiction. The court found Appellant "possesses a maturity and sophistication in the participation of vicious and violent conduct alleged consisting of Robbery in the 1st Degree and Escape from Custody within the juvenile facilities which exhibit a maturity and street wisdom well beyond his years." The court made its findings by "clear, cogent and convincing evidence, that [Appellant] is not a proper subject to be dealt with under the juvenile law."

This appeal follows.

**Discussion**

In his sole point on appeal, Appellant alleges the court abused its discretion in dismissing the juvenile cause of action and certifying Appellant to be prosecuted as an adult because the totality of the circumstances show that Appellant was the proper subject to be treated under the juvenile code. Appellant argues (1) the appeal is not moot as the Juvenile Officer had alleged in

12

a motion to dismiss;[4] (2) the hearing court erroneously assumed Appellant was guilty of the alleged offenses, the effects of which permeated the judgment; and (3) the hearing court's finding that Appellant was sophisticated and mature should shock this Court's conscience.[5] Appellant contends this violated his right to a meaningful certification hearing and due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Missouri Constitution, and Section 211.071.

*Standard of Review*

We review a juvenile court's decision to terminate jurisdiction over a youthful offender by determining whether, in the totality of the circumstances, the court abused its discretion. *T.D.S.*, 643 S.W.3d at 516 (*citing State v. Woodworth*, 941 S.W.2d 679, 697 (Mo. App. W.D. 1997)). "A juvenile court abuses its discretion if its 'ruling is clearly against the logic of the circumstances before it and is so unreasonable and arbitrary as to shock the sense of justice and indicates a lack of judicial consideration.'" *Interest of J.N.W. v. Juvenile Officer*, 643 S.W.3d 618, 631 (Mo. App. W.D. 2022) (*quoting In Interest of T.M.L.*, 615 S.W.3d 100, 102 (Mo. App. E.D. 2020). In reviewing a juvenile court's determination for an abuse of discretion, we will not reweigh the evidence or determine the reliability or credibility of the witnesses. *Id.* The trial court's decision will be affirmed unless there is no substantial evidence to support it, it is against

---

[4] The Juvenile Officer filed a motion to dismiss without prejudice on July 27, 2022, when the underlying case, Cause No. 2222-CR00316, had been dismissed on May 31, 2022, in the City of St. Louis circuit court for failure to prosecute. However, since then, the case was re-filed as Cause No. 2222-CR00822, and the Juvenile Officer concedes this appeal is no longer moot but ripe for appeal. We agree. The motion to dismiss is denied.

[5] This point raises multiple, independent claims of error and is multifarious. *Campbell v. Woodland Lakes Trusteeship, Inc.*, 591 S.W.3d 511, 513 (Mo. App. E.D. 2019) (internal citation omitted). "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." *Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 478 n.6 (Mo. banc 2018) (internal quotation omitted). "However, we have discretion to exercise review of multifarious points on appeal when the argument is readily ascertainable and does not require us to become an advocate for one party." *Dieckmann v. JH Constr. 2, LLC*, 619 S.W.3d 513, 522 (Mo. App. E.D. 2021). We exercise that discretion here.

13

the weight of the evidence, or it erroneously declares or applies the law. *Interest of J.M.C.*, 920 S.W.2d 173, 175 (Mo. App. W.D. 1996) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

*Analysis*

Appellant argues the hearing court erroneously assumed Appellant was guilty of the alleged offenses, the effects of which permeated the judgment. However, as previously noted, the court specifically noted, "It is not a prerogative of the Juvenile Court to make the determination in a dismissal proceeding whether the Juvenile is guilty of the offenses charged." The court reviewed the evidence on the basis of Appellant's involvement in the crime charged to "determine whether if the juvenile is eventually found to have committed the crime, [he] would be a fit subject to be dealt with under the juvenile code. *State v. Tate*, 637 S.W.2d 67[, 71] (Mo. App. E.D. 1982) [overruled on other grounds, *State v. Carson,* 941 S.W.2d 518, 520 (Mo. banc 1997)]."

Appellant argues this Court should heed the certification hearing guidance set forth by the Missouri Supreme Court in *State v. Nathan*, in that the juvenile court "is not required to find that these allegations are true, nor does it 'assume' they are true." 404 S.W.3d 253, 260 (Mo. banc 2013). The juvenile court may consider the allegations in the petition in deciding whether to relinquish jurisdiction, but Section 211.071.6 "refers solely to the nature of the offenses alleged, not whether the juvenile did (or did not) commit them." *Id.* Moreover, Appellant argues the juvenile court's erroneous assumption affected a number of factors upon which it placed substantial weight.

*Nathan* is indeed applicable during a certification hearing, and we find the juvenile court here followed its mandate. Our review of the judgment reveals the court carefully and

14

thoroughly evaluated Appellant in relation to the "alleged" offenses and all of the facts available. The court repeatedly used terms such as "conduct alleged" as it examined the nature of the offenses of robbery first degree and escape, and did not accuse or convict Appellant of the crimes in his certification as an adult. Ultimately, the court concluded that Appellant had exhausted the available remedies within the juvenile system and there were no programs or facilities that could safely accommodate him in the community for the short period of time he could remain in it.

Finally, Appellant alleges the juvenile court's finding that Appellant was sophisticated and mature should shock this Court's conscience, and the court abused its discretion in its judgment as the totality of the circumstances show that Appellant was the proper subject to be treated under the juvenile code. We disagree.

In determining whether to certify a juvenile for prosecution under the general law, a juvenile court shall consider several factors, although not exclusive criteria, listed in Section 211.071.6. *T.D.S.*, 643 S.W.3d at 523. The juvenile court need not give equal weight to each factor, nor must it make express findings on each one of the non-exclusive statutory factors. *Id.*; *J.N.W.*, 643 S.W.3d at 632. It "is only required by section 211.071.7(4) to make '[f]indings showing the reasons underlying the court's decision to transfer jurisdiction' in a manner 'that is sufficient to permit meaningful appellate review.'" *J.N.W.*, 643 S.W.3d at 632 (internal quotation omitted). In assessing the factors in Section 211.071, the juvenile court is entitled to significant discretion in reaching its certification determination. *T.D.S.*, 643 S.W.3d at 519 (*citing Coney v. State*, 491 S.W.2d 501, 511 (Mo. 1973)).

Section 211.071.6 specifically directs the juvenile court to assess "all available information relevant to the criteria." "Prior referrals, even those which were dismissed, are

15

proper subjects of the juvenile court's certification inquiry." *T.D.S.*, 643 S.W.3d at 525 (citing *Richardson v. State*, 555 S.W.2d 83, 87 (Mo. App. W.D. 1977)). The first three factors – the seriousness of the offense alleged and whether the protection of the community requires transfer to the court of general jurisdiction; whether the offense alleged involved viciousness, force and violence; and whether the offense alleged was against persons or property with greater weight given to the offense against persons, especially if injury resulted – are the most critical considerations in certification. *Id.* at 527. However, the first factor is a "dominant criterion among the ten factors." *Id.* (*quoting State v. Thomas*, 70 S.W.3d 496, 504 (Mo. App. E.D. 2002).

In *T.D.S.*, this Court affirmed the juvenile court's decision to certify a juvenile as an adult for charges of assault, robbery, and armed criminal action for stealing a vehicle at gunpoint that led police officers on a chase when he was 16 years old. The juvenile court found "rehabilitation in the juvenile system impossible because the Division of Youth Services could retain jurisdiction only until the age of eighteen." *Id.* at 516. This Court held the juvenile court did not abuse its discretion in looking at the totality of the circumstances and all ten factors, which favored certification. *Id.* at 527. Similarly, here, the juvenile court decided there was not enough time for Appellant to be rehabilitated through DYS prior to turning eighteen and no other programs or facilities were available within the juvenile system that would sufficiently address Appellant's issues.

We find the juvenile court carefully considered every factor set forth in Section 211.071.6. The juvenile court did not abuse its discretion in its thoughtful analysis of the criteria necessary for certification as each factor specifically related to Appellant. First, the court found the offenses were serious and the safety of the community weighed in favor of certification. The

16

alleged offenses involved viciousness, force, and violence, and they were committed against persons and resulted in personal (although not physical) injury to the victims. During Appellant's escape, the youth worker feared for his safety. These dominant and critical considerations clearly weighed in favor of certification, we find no abuse of discretion by the juvenile court in certifying Appellant as an adult.

Next, regarding the fourth and fifth factors in Section 211.071.6, whether the alleged offenses are part of a repetitive pattern, and the history of the juvenile in determining whether he is beyond rehabilitation, the court recognized Appellant was previously under the court's jurisdiction in 2019 for a charge of stealing from a person, a class D felony, which was amended from robbery first degree, a class A felony, like the current charge, and that he was detained in July 2020 for robbery first degree, attempted robbery first degree, and escape from confinement of DYS (although rejected/dismissed upon his return to DYS from which he absconded). The court found this history exhibits a pattern of conduct for serious offenses over several years, and that rehabilitation within the juvenile system would be fruitless. Moreover, the court noted the numerous formal and informal referrals he received over the past four years. Despite Appellant's progress and completion of services in DYS and Great Circle, he still escaped and his conduct continued unabated. Thus, we find the court reasonably concluded the juvenile court had exhausted its ability to rehabilitate him.

Regarding the sixth and seventh criteria, the juvenile's sophistication and maturity, considering his home and environment situation, emotional condition and pattern of living, as well as his age, the court found Appellant was not in a stable home based on his mother's inability to control Appellant and that father had not been in his life until very recently. The court found the serious offenses of robbery first degree and escape indicated a sophistication and

17

maturity beyond his years. This conclusion is supported by DJO Pugh's testimony that Appellant had used the traveling between mother and father's addresses to manipulate them and engage in negative behaviors. His mother had little control over him and had begun to accept his pattern of behaviors at this point. His father had been recently released from prison and Appellant looked up to him as they were establishing a relationship. Appellant would not enroll in school based on fear of street retaliation. He had recently tested positive for drugs, and the offenses with which he was charged or had referrals were felonies against other people, and he had absconded more than once when facing punishment. DJO Pugh observed Appellant's conduct progress over the past few years and believed that Appellant was sophisticated and mature. The court's finding that he was sophisticated and mature thus does not shock the conscience as Appellant contends. Moreover, the court correctly noted Appellant's age of 17 years and 9 months, but it found his age neither precludes nor requires certification. While these factors favored certification, the court's decision did not rely upon Appellant's maturity or sophistication.

The court discussed the eighth and ninth factors, finding the juvenile system's programs and facilities were not available for Appellant based on the seriousness of his conduct and the necessary security and time for adequate treatment to rehabilitate him. Further, the court found DYS placement of Appellant in the community was an insufficient structure and amount of time to protect the community. Appellant has exhausted all of the juvenile system resources. This was supported by DJO Pugh's testimony in that Appellant repeatedly generated new referrals despite the programs he completed. Appellant would need a much longer timeframe to rehabilitate than the few months of time he would have in the juvenile system before his eighteenth birthday. "We defer to the juvenile court's findings regarding the time needed to

18

rehabilitate a juvenile." *T.D.S.*, 643 S.W.3d at 526. A court may find, in its discretion, that a period of even five years may not be enough to rehabilitate a juvenile. *Id.* Thus, the court's finding here was not an abuse of discretion and weighed in favor of certification.

Finally, the court examined the last factor listed in Section 211.071.6, that neither race nor gender of Appellant or his alleged victims were factors in the Juvenile Officer's determination of which charges to allege against Appellant, or whether to seek certification. Thus, this criterion was not a factor in the court's decision to certify Appellant as an adult.

"Each juvenile is unique, and resources which may benefit one are not necessarily helpful to another." *T.D.S.*, 643 S.W.3d at 526. Clearly the juvenile court very thoughtfully analyzed all the factors in Section 211.071.6 as they applied to Appellant's past, present, and future, and not just the alleged crimes. The juvenile court did not abuse its discretion based on the totality of the circumstances in finding these factors favored Appellant's certification as an adult. The court did not assume Appellant's guilt of any of the alleged offenses but appropriately found the juvenile system was not the proper forum to determine Appellant's accountability regarding these allegations. Appellant's point is denied.

## Conclusion

The judgment of the juvenile court is affirmed.

_____
Lisa P. Page, Presiding Judge

Thomas C. Clark, II, J. and
Renée D. Hardin-Tammons, J. concur.

19